987 So.2d 1063 (2008)
Robert PATTON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2006-KA-01019-COA.
Court of Appeals of Mississippi.
July 22, 2008.
*1064 Johnnie E. Walls, Greenville, attorney for appellant.
Office of the Attorney General by Laura Hogan Tedder, attorney for appellee.
Before KING, C.J., IRVING AND CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. Robert Patton (Patton) and his brother, Hezekiah Patton (Hezekiah), were tried together in the Circuit Court of Bolivar County for the crime of bribery of a public official. The jury acquitted Hezekiah, but it found Patton guilty. The trial court sentenced Patton to five years in the custody of the Mississippi Department of Corrections, with one year to serve and four years suspended.
¶ 2. Patton appeals. He challenges the weight and sufficiency of the evidence supporting the bribery conviction and contends that the facts show he was entrapped by State officials. He also argues that errors occurred at his trial, which considered cumulatively, warrant a reversal.
¶ 3. Finding no error, we affirm Patton's conviction and sentence.

FACTS
¶ 4. Patton was the mayor of Shelby, Mississippi. On the night of March 4, 2005, Officers Marion Bedford and Ricardo Tell, with the Shelby Police Department, responded to a burglary reported by an employee at Minnie's Café in Shelby. Minnie's was a juke joint owned and operated by Patton's brother, Hezekiah. Upon entering Minnie's, Officers Bedford and Tell discovered six illegal gaming machines located in a back room. Officer Bedford radioed dispatch for assistance from his supervisor, Eddie Shannon, who was serving as the interim police chief. Officer Tell left the scene to apprehend the suspected burglar. At some point, Hezekiah and Patton arrived at Minnie's. Then, Chief Shannon arrived.
¶ 5. Chief Shannon testified that Patton, as the mayor, was his boss. Chief Shannon testified that when he arrived at Minnie's, Patton asked if he could ride around the block with him in Chief Shannon's vehicle. According to Chief Shannon's testimony, during the ride, Patton asked Chief Shannon to leave the gaming machines at Minnie's. When they returned to Minnie's, Chief Shannon instructed the officers not to seize the machines. Shortly thereafter, Patton and Chief Shannon rode around the block again. Chief Shannon testified that, during this ride, Patton told him that the gaming machines belonged to Hezekiah, and Patton would give Chief Shannon some money if he would inform the brothers when the Mississippi Gaming Commission was coming to Shelby to remove the gaming machines.
*1065 ¶ 6. On March 5, 2005, Chief Shannon reported these incidents to the Mississippi Gaming Commission and the Office of the Attorney General of the State of Mississippi. These agencies commenced an investigation into the allegations of bribery. As part of the investigation, Chief Shannon had several conversations with Patton while wearing a body wire. Many of these conversations were recorded on microcassette tapes, which Chief Shannon turned over to investigators with the Attorney General's Office. The following is a chronology of the evidence gathered during the investigation and admitted at the trial:
March 8, 2005  Patton and Chief Shannon met to take pictures of an abandoned house as a part of city business. Patton asked Chief Shannon if everything was quiet. Chief Shannon told Patton that an officer was not pleased about leaving the gaming machines at Minnie's. Patton responded that the officer just wanted money, and he would pay the officer $20 or $30. This conversation was recorded on a cassette tape that was admitted into evidence.
March 9, 2005  Chief Shannon met with agents from the Attorney General's Office and from the Gaming Commission. They formulated a plan for Chief Shannon to inform Patton that the Gaming Commission was coming to seize the gaming machines.
March 10, 2005, morning  Chief Shannon went to Patton's home and told him that the Gaming Commission, in response to an anonymous tip, was coming to Minnie's around noon that day. Because Chief Shannon's body recorder malfunctioned, no tape recording of this conversation was made; the only evidence of it was Chief Shannon's testimony. Chief Shannon testified that Patton seemed nervous and that Patton called Hezekiah. Then, Chief Shannon raised the issue of Patton's promise to pay him in exchange for the tipoff. Patton stated that Hezekiah would bring him money that weekend. A short time later, Investigator Bert Wallace with the Attorney General's Office videotaped Hezekiah and other men moving six gaming machines out of the rear door of Minnie's and loading them into the bed of a pickup truck, which they then drove away. These gaming machines were large, freestanding machines. The videotape was admitted into evidence.
March 10, 2005, 11:15 a.m.  Gaming Commission agents searched Minnie's for the gaming machines, but none were found.
March 10, 2005, afternoon  Chief Shannon called Patton and told him that the Gaming Commission had come. Patton thanked Chief Shannon for the tipoff and said that he would like to know if Chief Shannon heard they were coming back. A tape recording of this conversation was admitted into evidence.
March 25, 2005  Chief Shannon and Patton talked in the courtroom located in the police department building. Chief Shannon told Patton that he had not received anything and that he needed money to pay a bill. Patton asked him if fifty dollars would suffice, and Chief Shannon assented. Patton said he would get back with him. A tape recording of this conversation was admitted into evidence.
April 12, 2005  Chief Shannon spoke with Patton at the police department and told Patton he had not received anything, though he had taken a big risk. Patton replied that they had both taken a big risk. Patton said that all he could do was set up the payment, but he would make sure Chief Shannon got the fifty dollars the next day. A tape recording *1066 of this conversation was admitted into evidence.
April 13, 2005  Chief Shannon again told Patton he had not received anything. Patton said that he had made arrangements for the payment that morning and that Chief Shannon would receive the money that day. A tape recording of this conversation was admitted into evidence.
April 13, 2005, afternoon  Hezekiah came to the door of the police department and nodded at Chief Shannon. Chief Shannon went over to Hezekiah, who handed Chief Shannon fifty dollars in cash, and said, "Robert told me to give this to you." Chief Shannon placed the money into his safe, and then he gave it to Investigator J.W. Watkins with the Attorney General's Office. Later that afternoon, Patton asked Chief Shannon if anyone had shown up, and Chief Shannon said yes, and the person had given him fifty dollars as promised. Chief Shannon did not record his interactions with Hezekiah or with Patton on that afternoon.
April 20, 2005  Investigator E.W. Williams with the Gaming Commission seized five illegal gaming machines from Minnie's.
April 26, 2005  Chief Shannon called Investigator Watkins and reported that Patton had approached him twice at Chief Shannon's residence asking that Chief Shannon retract his statements to the authorities. No tape recording was made of these conversations.
¶ 7. Both Patton and Hezekiah testified in their own defense. Patton denied that he asked Chief Shannon to tell him when the Gaming Commission was coming. Patton also denied that he offered Chief Shannon any money. He testified that the fifty dollars given to Chief Shannon did not come from him. Patton testified that Chief Shannon repeatedly bothered him about needing a loan to pay a bill. According to Patton, this requested loan was the subject of the taped conversations. Patton also testified that Chief Shannon had a grudge against him because Patton had not supported him being hired as the interim police chief. Patton testified that 2005 was an election year, and he believed Chief Shannon supported his opponent. In his testimony, Chief Shannon denied that his conduct was politically motivated.
¶ 8. Patton testified that before March 4, 2005, he had not known there were gaming machines at Minnie's. However, he also testified that he believed the gaming machines were legally present at Minnie's because they had been returned there by an order of a municipal court judge. Patton testified that he had no interest in nor derived any income from Minnie's.
¶ 9. Municipal Court Judge James Strait testified that a former Shelby police chief had confiscated two or three tabletop-size gaming machines from Minnie's and had brought them to the police station. Judge Strait testified that he ordered the machines returned to Minnie's because the former police chief never obtained a determination from the Gaming Commission that the machines were illegal. Judge Strait testified that these events occurred eight months to one year prior to Patton's trial.
¶ 10. Hezekiah testified that the gaming machines shown in the videotape were approximately five feet, eight inches high. He admitted that the gaming machines released to Minnie's by Judge Strait had been smaller. Hezekiah denied that he was guilty of bribery. Hezekiah testified that in addition to owning and operating Minnie's, he worked as a bail bondsman. Hezekiah testified that, on April 12, 2005, Chief Shannon contacted him regarding a bond for Shalunda Smiley, who had been *1067 arrested. Hezekiah was in Cleveland, Mississippi when he received the call. Hezekiah admitted that he gave Chief Shannon fifty dollars on April 13, 2005, but he asserted that this sum was a payment for transferring Smiley to a correctional facility in Cleveland at Hezekiah's request. Copies of the bonds and arrest reports for Smiley and a cell phone record, purportedly showing Chief Shannon's call to Hezekiah, were admitted into evidence.
¶ 11. The jury found Patton guilty of bribery, but it acquitted Hezekiah. After the guilty verdict, Patton resigned from his position as mayor of Shelby. The trial court sentenced him to five years in the custody of the Mississippi Department of Corrections, with four years suspended.

LAW AND ANALYSIS

I. WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE VERDICT, OR WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 12. Patton filed a post-trial motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The trial court denied the motion. Patton renews these arguments on appeal. We begin by reviewing the sufficiency of the evidence, which is challenged by a motion for a JNOV. In determining whether the evidence is sufficient to sustain a conviction, "the critical inquiry is whether the evidence shows `beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test[,] it is insufficient to support a conviction.'" Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, then this Court will affirm the denial of a JNOV. Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). But if the facts and inferences, so considered, point in favor of the defendant on any element of the offense with sufficient force that no reasonable juror could have found guilt beyond a reasonable doubt, then we must reverse and render. Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss. 1985)).
¶ 13. The crime of bribery of a public official is codified at Mississippi Code Annotated section 97-11-11 (Rev.2006). The section provides in part:
Every person who shall promise, offer or give to any officer, agent or trustee, either public or private, while holding such office, agency or trust, . . . any money . . . with intent to influence his vote, opinion, action or judgment on any question, matter, cause or proceeding which may be then pending, . . . shall, on conviction, be imprisoned in the penitentiary not more than ten (10) years, or fined not more than Five Thousand Dollars ($5,000.00), or both, and shall be forever disqualified from holding any public office, trust or appointment, and shall forfeit his office, if any be held.
The four elements of the crime are: "(1) [o]ffer of bribe; (2) to public officer; (3) with the intent to influence his action or judgment; (4) on any question, matter, cause or proceeding which may be then or thereafter pending subject to his action or judgment." McLemore v. State, 241 Miss. 664, 672, 125 So.2d 86, 89 (1960).
¶ 14. Patton argues that the evidence was insufficient to enable a reasonable jury to find him guilty of bribery of a *1068 public official because the State did not prove that the fifty dollars which Hezekiah gave to Chief Shannon was bribe money. He contends that the evidence established that the fifty dollars was a payment to Chief Shannon for transporting Smiley to Cleveland. We note that the evidence conflicted regarding the purpose of the fifty dollars. It is the jury's role to assess the weight and credibility of the evidence and to resolve any differences in the evidence. Latiker v. State, 918 So.2d 68, 73(¶ 12) (Miss.2005). Nonetheless, Patton's argument is without merit because the State need not prove a completed bribery in order to secure a conviction of bribery of a public official. McLemore, 241 Miss. at 673, 125 So.2d at 89. The McLemore court stated:
The condemned offense is the offer to bribe, not completed bribery. There need not be a mutual intent on the part of both the giver and the offeree or accepter of the bribe. It is the offering of the bribe that constitutes the substantive crime under the statute. It is immaterial whether an attempt or offer to bribe is successful. Nor is any actual tender of the bribe necessary to perfect the offense. The offer to produce a bribe is sufficient.
Id. at 673, 125 So.2d at 89-90 (citations omitted). Therefore, the State was not required to prove that the fifty dollars constituted the bribe money.
¶ 15. Patton also contends that the State failed to prove an offer to bribe. Patton argues that there was insufficient evidence that he promised Chief Shannon anything in exchange for notification of the Gaming Commission's arrival. In support of this argument, Patton points out that his conversations with Chief Shannon on the night of the burglary were not captured on tape, and no money was mentioned during their taped follow-up conversation on the afternoon of March 10, 2005.
¶ 16. Chief Shannon testified that, on the night of the burglary, Patton offered to pay him in exchange for notification of when the Gaming Commission was coming to check on the machines. Further, Chief Shannon's testimony about Patton's offer was corroborated by the taped conversation on March 25, 2005, in which Patton expressed his intent to pay Chief Shannon for the tipoff, and by the subsequent taped conversations in which Patton assured Chief Shannon that he would be paid. Patton's motive for the bribery was firmly established by the fact that once Chief Shannon told Patton that the Gaming Commission was coming, the gaming machines were moved temporarily out of Minnie's. They were replaced after Chief Shannon assured Patton that the Gaming Commission was gone. From all of this evidence, a reasonable jury could have concluded beyond a reasonable doubt that Patton offered to pay money to Chief Shannon in an attempt to influence Chief Shannon's action concerning the Gaming Commission. The evidence was sufficient to support Patton's conviction of bribery of a public official.
¶ 17. We now turn to Patton's argument that the verdict was against the overwhelming weight of the evidence, which Patton challenged at the trial level with his motion for a new trial. On review of the denial of a motion for a new trial, "we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush, 895 So.2d at 844(¶ 18). This Court takes the position of the thirteenth juror, meaning that we will reverse if, weighing the evidence in the light most favorable to the verdict, we "[disagree] with the jury's resolution of the conflicting testimony." *1069 Id. However, we will grant a new trial "only in exceptional cases in which the evidence preponderates heavily against the verdict." Id. (quoting Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947(¶ 18) (Miss.2000)).
¶ 18. Patton argues that the jury's acquittal of Hezekiah meant that it believed the fifty dollars that Hezekiah gave Chief Shannon was for Smiley's transport. He argues that the jury's belief that the fifty dollars was not bribe money conflicted with its finding that Patton was guilty of bribery, rendering the verdict against the overwhelming weight of the evidence. As discussed above, the jury reasonably could have found Patton guilty based upon his offer to bribe Chief Shannon. Therefore, to convict Patton, the jury did not have to believe that the fifty dollars that Hezekiah gave to Chief Shannon was the intended bribe money. Chief Shannon's testimony that Patton offered him a bribe in return for a tipoff about the Gaming Commission was amply supported by the other evidence offered by the State. Considered in the light most favorable to the verdict, the evidence did not preponderate so heavily against the verdict that affirming Patton's conviction would sanction an unconscionable injustice. This issue is without merit.

II. WHETHER PATTON WAS ENTRAPPED.
¶ 19. The jury was instructed on the defense of entrapment. Patton argues that the evidence was such that a reasonable jury, applying the beyond a reasonable doubt standard, could have only found that his commission of bribery was the result of entrapment by state officials. The defense of entrapment comprises "the act of inducing or leading a person to commit a crime not originally contemplated by him, for the purpose of trapping him in its commission and prosecuting him for the offense." McLemore, 241 Miss. at 675, 125 So.2d at 91. The entrapment defense fails if the State merely gave the defendant the opportunity to commit a crime which originated in the defendant's own mind. Id. Entrapment is an affirmative defense; thus, the defendant has the burden of proof. Hopson v. State, 625 So.2d 395, 399 (Miss.1993). The defendant may raise the entrapment defense while denying any or all of the elements of the crime. Id. at 400. A defendant may raise the entrapment defense upon a showing of: (1) proof of government inducement to commit the criminal act and (2) a lack of predisposition to engage in the criminal act before contact with government agents. Id.
¶ 20. Patton contends that the evidence fell short of establishing his predisposition to bribe Chief Shannon. Patton alleges that investigators with the Attorney General's Office directed Chief Shannon to "get" Patton. Patton argues that the evidence conclusively showed that: it was Chief Shannon who initiated the subject of money; it was Chief Shannon who repeatedly asked for money; and it was Chief Shannon who broached the subject of informing Patton when the Gaming Commission was coming.
¶ 21. Patton's contentions about the facts are refuted by evidence presented at the trial that substantially showed Patton was predisposed to commit bribery before Chief Shannon contacted the state authorities. Chief Shannon's testimony established that the government investigation was instigated by Patton's request that Chief Shannon accept money in exchange for notifying Patton when the Gaming Commission was coming. This request occurred on the night of the burglary, prompting Chief Shannon's call to the Attorney General's Office and the Gaming Commission. The existence of an outstanding offer by Patton to give money to Chief Shannon in exchange for the tipoff *1070 was supported by the taped conversations. Contrary to Patton's arguments, there was sufficient evidence in the record to permit a reasonable jury to reject Patton's entrapment defense.

III. WHETHER THE CUMULATIVE EFFECT OF THE ERRORS WARRANTS REVERSAL OF PATTON'S CONVICTION AND SENTENCE.
¶ 22. Citing Genry v. State, 735 So.2d 186 (Miss.1999), Patton argues that "there are errors so apparent from the record and testimony that the cumulative effect of them warrants reversal." In Genry, the supreme court stated that: "this [c]ourt may reverse a conviction and sentence based upon the cumulative effect of errors that independently would not require reversal." Id. at 201(¶ 73). However, when there is no error as to any part, there can be no reversible error as to the whole. Id.
¶ 23. Regarding Patton's assertion that errors occurred that are apparent from the record and testimony, this Court does not consider an appellant's broad assertions lacking any clear argument or citation to any meaningful authority to support the assignment of error. Coleman v. State, 697 So.2d 777, 787 (Miss.1997). We have found that the assignments of error which Patton made in his brief to be without merit. Thus, there are no errors for this Court to consider cumulatively. This issue is without merit.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY OF CONVICTION OF BRIBERY OF A PUBLIC OFFICIAL AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH ONE YEAR TO SERVE AND FOUR YEARS SUSPENDED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.