469 So.2d 68 (1985)
Jimmy Wayne EDWARDS
v.
STATE of Mississippi.
No. 55511.
Supreme Court of Mississippi.
February 20, 1985.
As Modified on Denial of Rehearing May 22, 1985.
L. Arthur Hewitt, Hattiesburg, for appellant.
*69 Edwin Lloyd Pittman, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:
The question in this case is whether proof of delivery of a check made payable to two parties and endorsed by each of those parties, without more, is sufficient, in the context of a criminal prosecution for food stamp fraud, to establish that one of the parties received any given portion of the face amount of the check. The question becomes outcome-determinative in that proof of the amount in fact received by defendant is an essential element of the offense. Because substantial guesswork, speculation and conjecture must necessarily infect any answer to the question, we hold that such facts may not be sufficient to undergird a conviction predicated thereon.
On March 29, 1982, the Leake County Food Stamp Office recertified the Jimmy Wayne Edwards household of Thomastown, Mississippi, for food stamp assistance. As an incident thereto, Edwards executed a "Rights and Responsibilities" form which required, among other things, that he report any change in overall financial resources reaching or exceeding $1500.00. Under applicable regulations, such receipts would have had the effect of altering Edwards' eligibility for continued assistance.
On May 6, 1982, the Central Electric Power Association issued a check in the amount of $3,500.00 payable jointly to Jimmy Wayne Edwards and to Crawley & Ford, P.A., Attorneys at Law. The check appears to have been in payment for a reward claim made by Edwards concerning the death of Wilton Freeny who was a meter reader with the company, although the full facts and circumstances surrounding the reason for payment of the check are neither explained nor particularly important. The check was paid according to its tenor after having been endorsed without restriction by both Edwards and William R. Ford on behalf of Crawley & Ford, P.A.
On May 10, 1982, Edwards and his wife opened a checking account at the Merchants & Farmers Bank in Thomastown. The initial deposit was $500.00. Past that there is simply no evidence what became of the proceeds of the check. Importantly, at no time did Edwards apprise the Leake County Food Stamp Office that he had received any additional resources, although he was not required to unless such exceeded $1,500.00.[1]
In any event, on May 2, 1983, the Grand Jury of Leake County, Mississippi, returned an indictment wherein Edwards was charged with food stamp fraud in violation of Miss. Code Ann. § 97-19-71(1)(b) (Supp. 1982).[2] Edwards in due course was put to trial and on January 10, 1984, found guilty. He has been sentenced to the custody of the Mississippi Department of Corrections for a term of one and one-half (1 1/2) years. From this conviction and sentence, Edwards has perfected the instant appeal.
Edwards' theory on appeal is quite simple. He says the State simply hasn't proved him guilty and that the evidence as a matter of law is insufficient to support the verdict of the jury. He preserved the *70 point by requesting in the trial court a peremptory instruction and, after the jury's adverse verdict, moving in effect for judgment of acquittal notwithstanding the verdict.
It is hornbook law that in every criminal case, the state is required to prove each element of the offense charged beyond a reasonable doubt. Neal v. State, 451 So.2d 743, 757 (Miss. 1984); Bullock v. State, 447 So.2d 1284, 1286 (Miss. 1984). Where a defendant in a criminal prosecution has requested a peremptory instruction or moved for judgment notwithstanding the verdict, each element of the offense is tested for evidentiary sufficiency. In such a setting, the trial court must consider all of the evidence  not just the evidence which supports the State's case  in the light most favorable to the State. May v. State, 460 So.2d 778, 781 (Miss. 1984). The State must be given the benefit of all favorable inferences that may reasonably be drawn from objective facts established by the evidence. Glass v. State, 278 So.2d 384, 386 (Miss. 1973).
If the facts and inferences so considered point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the motion is required. May v. State, 460 So.2d 778, 781 (Miss. 1984). On the other hand, if there is substantial evidence opposed to the motion  that is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense  the motion should be denied.
At the very least the State in this case had the burden to prove two things: (1) that Edwards received more than $1500.00, and (2) that he did not report it. The State proved half its case  that Edwards reported nothing. The State wholly failed, however, to prove by objective, factual evidence that Edwards received anything beyond $500.00. The record is simply void of any evidence as to what happened to the proceeds of the check. At best a rational jury could have found that Edwards received $500.00  the amount equal to that which he deposited in a checking account four days later.
In this state of the evidence, the State is reduced to reliance upon inferences and presumptions, although just what inferences or presumptions come into play the State does not make clear.[3] Any attempt to presume, however, that Edwards received any portion of the check (over the $500.00 deposited in the bank account) runs squarely into authoritative constructions of the due process clause of the Fourteenth Amendment to the Constitution of the United States.
Inferences and presumptions are a staple of our adversary system of fact finding. It is often necessary for the trier of fact to determine the existence of an element of the crime  that is, an "ultimate" or "elemental" fact  from the existence of one or more "evidentiary" or "basic" facts. [citations omitted] The value of these evidentiary devices, and their validity under the Due Process Clause, vary from case to case, however, depending on the strength of the connection between *71 the particular basic and elemental facts involved and on the degree to which the device curtails the fact finders' freedom to assess the evidence independently. Nonetheless in criminal cases, the ultimate test of any devices constitutional validity in a given case remains constant: the device must not undermine the fact finder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt. [citations omitted]
 Ulster County Court v. Allen, 442 U.S. 140, 156, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777, 791 (1979) (emphasis added); see also Francis v. Franklin, ___ U.S. ___, 105 S.Ct. 1965, 85 L.Ed.2d ___ (1985); Sandstrom v. Montana, 442 U.S. 510, 520-21, 99 S.Ct. 2450, 2457-58, 61 L.Ed.2d 39, 48-49 (1979); Mullaney v. Wilbur, 421 U.S. 684, 699-704, 95 S.Ct. 1881, 1889-92, 44 L.Ed.2d 508, 520-22 (1975).
The State's position in this matter boils down to: "We showed that he might have received too much money, now its up to him to prove that he didn't." This is tantamount to Roman Law. Such a proposition may not co-exist with the authoritative articulation of Edwards' due process rights found in Jackson v. Virginia, 443 U.S. 307, 315-36, 99 S.Ct. 2781, 2787-98, 61 L.Ed.2d 560, 571 (1979) and In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
Beyond the illegality of the presumption suggested by the State, it must be noted that the jury was never instructed regarding such a presumption. Without the aid of this presumption, the essential element to Edwards' alleged crime  receiving more than $1500.00  was simply not proved at trial. The jury's verdict thus cannot stand. Because the evidence adduced at trial was insufficient as a matter of law to sustain the verdict, the conviction of Jimmy Wayne Edwards is reversed and the sentence of one and one-half (1 1/2) years imposed upon him is vacated, and Edwards shall forthwith stand discharged.
REVERSED AND APPELLANT DISCHARGED
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] As indicated by the testimony of Jerry Beckham, an eligibility worker with the Leake County Food Stamp Office, "they can take that in excess of the $1,500.00 and apply that to their overdue bills before we actually value it as a resource to determine whether or not they're eligible or ineligible."
[2] The statute in relevant part reads:

§ 97-19-71. Fraud in connection with state or federally funded assistance programs; penalty.
(1) Any person who knowingly:
* * * * * *
(b) Fails to disclose a change in circumstances in order to obtain or continue to receive under any such program aid or benefits or services to which he is not entitled or in an amount larger than that to which he is entitled, or who knowingly aids and abets another person in the commission of any such act; is guilty of fraud.
[3] We have considered that some states appear to indulge in a presumption that

Where a conveyance is made in the names of a number of parties to an instrument and the conveyance does not show their respective interests, the presumption is that they own in equal shares, but such presumption is rebuttable by parol evidence. [citations omitted]  Garrett v. Ellison, 93 Utah 184, 191, 72 P.2d 449, 452 (1937); cf. Post Bros. Construction Co. v. Yoder, 20 Cal.3d 1, 141 Cal. Rptr. 28, 30, 569 P.2d 133, 135 (1977) (when a subcontractor and his materialman are joint payees, and no agreement exists with the owner or general contractor as to any allocation proceeds, the materialman by endorsing the check will be deemed to have received the money due him).
No state seems to have held this presumption sufficient to establish a material element of a criminal offense. Insofar as our research has disclosed, this state has not heretofore recognized this presumption in any context.