¶ 59. The only evidence tying Danny Jones to the death of Deloris Knight was fingerprints on a beer can found across the street from her house. Because the evidence in this case is so wholly insufficient to support a murder conviction, I must respectfully dissent.
 ¶ 60. Although the majority only briefly addresses the weight of the evidence, Jones also argues on appeal that the evidence was legally insufficient to support a conviction. Jones moved for a directed verdict at the close of the state's case-in-chief and also moved post-trial for a judgment notwithstanding the verdict. Both motions challenge the sufficiency of the evidence, and this is not the first time a defendant has erroneously combined the weight and sufficiency arguments on appeal. See Bush v. State, 895 So.2d 836,843 (Miss. 2005); Foster v. State, 919 So.2d 12, 15
(Miss. 2005).
 ¶ 61. In determining whether the evidence is sufficient to sustain a conviction, we look at the evidence in the light most favorable to the state. Bush, 895 So.2d at 843. Our inquiry focuses on whether this evidence shows "beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction."Id. (quoting Carr v. State, 208 So.2d 886,889 (Miss. 1968)). If the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the appropriate remedy is to reverse and render. Id.
(quoting Edwards v. State, 469 So.2d 68, 70
(Miss. 1985)).
 ¶ 62. At best, the state proved that Jones may have consumed beer in the same place from which the shooter killed Knight. The state offered no proof that Jones was sitting in that spot when Knight was killed. The state never introduced a murder weapon, and there was no evidence that Jones owned or had access to the type of gun used to kill Knight.
 ¶ 63. I also question the dubious expert testimony offered to prove that the shots were fired from the area where the beer cans were found. The investigating officer was prohibited from testifying that someone could shoot from the location of the cans into the garage. However, Dr. Hayne testified that in his expert opinion, he could tell the bullet was coming from a 20 degree angle where the cans were *Page 1279 
found. First, Dr. Hayne is at best a forensic pathologist, not an expert in ballistics. The state made no effort to qualify him as an expert in ballistics. Second, even if he were a ballistics expert, his testimony is based on the direction the victim was facing. As no one witnessed the shooting, and Knight died after walking inside the house, there is no evidence of the position of her body when she was shot. Accordingly, the state failed to establish a foundation for this testimony, and it should be excluded as improper and irrelevant.[1]
 ¶ 64. Finally, it is impossible to ignore the extreme delay between Jones's arraignment and his trial. Jones was arraigned on September 20, 2001, but was not tried until January 23, 2006. Jones filed a motion to dismiss based on his right to a speedy trial on September 26, 2002, three-hundred and seventy-one days after his arraignment. No trial date had been set in more than one hundred days past the statutory deadline. Miss. Code Ann. § 99-17-1 (Rev. 2000) ("Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned."). It is impossible to reconcile this discrepancy with our constitutional and statutory provisions regarding speedy trials. See Guice v.State, 952 So.2d 129, 143-51 (Miss. 2007) (Diaz, J., dissenting).
 ¶ 65. In conclusion, it cannot be said that the state presented sufficient evidence to support a murder conviction, and I would reverse.
[1] This is not the first time Dr. Hayne has offered questionable testimony outside his area of expertise. Recently, in Edmonds v. State, 955 So.2d 787, 792-93
(Miss. 2007), this Court reversed a conviction in part because Dr. Hayne was allowed to testify that he could tell two people were holding the gun used to kill the victim. Interestingly, inEdmonds, Dr Hayne testified that in his twenty-five-year career, he had performed 25,000 to 30,000 autopsies. Id. at 802 (Diaz, P.J., specially concurring). In the present trial, which was conducted only a year and a half after Edmonds, Dr. Hayne testified that he had been practicing for thirty-five years and had performed 35,000 autopsies.