# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-KM-01801-SCT

*GRAHAM WARWICK a/k/a GRAHAM ROBINSON*
*WARWICK a/k/a GRAHAM R. WARWICK*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/25/2014 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| TRIAL COURT ATTORNEYS: | KEVIN DALE CAMP |
| | JARED KEITH TOMLINSON |
| | JOHN G. (TRAE) SIMS, III |
| COURT FROM WHICH APPEALED | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | KEVIN D. CAMP |
| | JARED K. TOMLINSON |
| ATTORNEY FOR APPELLEE: | JOHN G. SIMS, III |
| DISTRICT ATTORNEY: | MADISON CITY PROSECUTOR |
| | JOHN G. SIMS, III |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED - 12/10/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Graham Warwick appeals his conviction for driving under the influence of marijuana,

arguing that his conviction is against the weight and sufficiency of the evidence.  Finding no

error, we affirm.

## FACTS & PROCEDURAL HISTORY

¶2.    On July 16, 2012, at around 6:20 p.m., Officer Tyler Burnell of the Madison Police Department had just completed a traffic stop at the intersection of Highway 463 and Stribling Road and was preparing to drive back to the City of Madison when he observed a four-door car with dark-tinted windows driving by.  Officer Burnell pulled out behind the vehicle and continued to observe it.  At one point, the vehicle weaved over the double yellow line in the center of the road.  The vehicle continued to drive eastbound on Highway 463 toward the City of Madison, with Officer Burnell following behind.  As the vehicle approached the entrance to the Annandale neighborhood, it weaved again within its lane of traffic.  After a short time, Officer Burnell noticed that the driver had rolled the vehicle's front windows down after he had begun following it.  When the vehicle made a right turn onto Ingleside Drive, within the Madison city limits, Officer Burnell was able to conclude that the vehicle's side windows were illegally tinted.  At that point, Officer Burnell initiated a traffic stop of the vehicle.

¶3.    Officer Burnell approached the vehicle and identified the driver by his license as Graham Warwick. Officer Burnell issued Warwick a citation for his illegally tinted windows and then asked him to step out of the vehicle so he could show him how to correct the violation. While discussing the window tint with Warwick, Officer Burnell noticed that Warwick's eyes were bloodshot. Officer Burnell asked Warwick if he was taking any medications, and Warwick responded that he currently was taking medication for attention deficit disorder and anxiety. He stated that he carried both medications in his vehicle. Officer

2

Burnell searched the vehicle after receiving Warwick's consent and located those medications.

¶4. Officer Burnell asked Warwick if he would be willing to undergo a field sobriety test, and Warwick consented. On the date in question, Officer Burnell was certified in Standardized Field Sobriety Testing and Instruction, Advanced Roadside Impaired Driving Enforcement, and Intoxilyzer 8000 Operation, and was in the process of completing his field evaluations for Drug Recognition Expert (DRE) certification. Before performing any of the tests, Warwick affirmed that he had no physical impairments that would hinder his ability to complete the tests. First, Officer Burnell conducted the Romberg Balance Test, which judges the subject's ability to estimate the passage of time. Warwick was three seconds slow in estimating the passage of thirty seconds, and he exhibited eyelid tremors while performing the test. Next, Officer Burnell conducted the horizontal-gaze nystagmus test. Warwick presented no indicators of intoxication during this test. Officer Burnell also conducted the lack-of-convergence test. Warwick's eyes failed to converge during this test, and Officer Burnell noted that lack of convergence is associated with impairment by depressants, inhalants, dissociative anesthetics, or cannabis. Finally, Officer Burnell conducted the walk-and-turn test. During this test, Warwick failed to walk heel-to-toe at one point and stepped off the line once. Based on the results of these tests, Officer Burnell concluded that Warwick had been driving under the influence and placed him under arrest.

¶5.    Officer Burnell transported Warwick to the Madison Police Department, where he underwent a DRE evaluation.[1] Before undergoing the evaluation, Warwick waived his *Miranda* rights. During the evaluation, Officer Burnell was supervised by Lieutenant Mark Sandridge, a DRE instructor. Warwick initially performed a preliminary breath test, which was negative for alcohol. Officer Burnell then asked Warwick what he had eaten and drunk earlier that day. Warwick responded that he had consumed two energy drinks. Officer Burnell checked Warwick's pulse and pupil size, noting that Warwick's pulse was slightly elevated and that his pupil size was normal. Warwick then underwent another series of field sobriety tests. Warwick's eyes failed to converge again, and his perception of time was slightly slow during the Romberg Balance Test. He performed the finger-to-nose test incorrectly three out of six times, and he missed a heel-to-toe step twice during the walk-and-turn test. Officer Burnell then checked Warwick's pupil size a second time with a "dark room" test. Warwick's pupils tested within the normal range under normal light and in the dark, but they "rebounded" after constricting under direct light. Officer Burnell noted that this "rebound dilation" is an indicator of marijuana use. Officer Burnell checked Warwick's oral and nasal cavities, as well as his pulse and muscle tone. Warwick's nasal cavities were clear, but his taste buds were raised on the back of his tongue, which, according to Officer Burnell, is another indicator of marijuana use. Warwick's muscle tone was normal, and his pulse remained slightly elevated.

---

[1] A DRE evaluation is a standardized method of DUI examination that uses twelve distinct criteria to determine whether the subject is impaired, whether the impairment was caused by drugs, and what category or combination of drugs caused the impairment.

4

¶6.    Based on the results of the DRE evaluation, Officer Burrell reached the conclusion that Warwick was under the influence of marijuana.  Warwick refused to submit a urine sample for testing, so Officer Burrell obtained a search warrant and transported Warwick to Crossgates River Oaks Hospital for blood testing.  At the hospital, a registered nurse drew two vials of blood from Warwick using the DUI evidence kit provided by the police.  Blood tests conducted by the Mississippi Crime Laboratory concluded that Warwick's blood contained the active metabolite of marijuana in the amount of 2.3 nanograms per milliliter.  Warwick's blood also tested positive for a normal amount of caffeine.

¶7.    Warwick was charged with driving under the influence, first offense, in violation of Section 63-11-30(1)(d) of the Mississippi Code.  In addition, Warwick was charged with having  illegally tinted or darkened windows, second offense.  He was found guilty of these charges on March 7, 2013, in Madison Municipal Court.  Warwick timely appealed his case to the Madison County Court, where he received a bench trial.

¶8.    At trial, Officer Burnell and Lieutenant Sandridge testified concerning their observations of Warwick on the night of his arrest.  They both offered the opinion that Warwick had been driving under the influence of marijuana. Emily Harper, the forensic toxicologist who conducted Warwick's blood testing, testified as an expert witness for the State. Harper testified that the euphoric feeling caused by marijuana usually lasts about two hours for a typical user, while the pharmacological effects – impairment to reaction time, memory, hand-eye coordination, and muscular control – usually last between five and six

5

hours. Harper opined that Warwick's blood-test results generally would be indicative of marijuana use three to five hours prior to the sample being taken.

¶9.    Warwick did not testify in his own defense.  The defense called Tony Corrotto as an expert witness in the areas of field sobriety testing and DRE protocols.[2]  Corroto is a retired police officer who currently works as an expert witness and legal consultant in the areas of drug recognition and sobriety testing.  Corroto reviewed the footage from Officer Burnell's dashboard camera which documented his traffic stop of Warwick.  He opined that Warwick did not present any indicators of impaired driving when he was pulled over or during his initial contact with Officer Burnell. Corroto attributed Warwick's eyelid tremors to the energy drinks he had consumed earlier in the day, and he claimed that Warwick had exhibited eyelid tremors after drinking coffee on the morning of trial. Corroto then performed a lack-of-convergence test on Warwick in the courtroom, and Warwick's eyes failed to converge. Corroto also testified that the walk-and-turn test could not be used to test for marijuana impairment. Finally, Corroto explained that he believed that Warwick did not have dilated pupils during his DRE evaluation. Based on these factors, Corroto opined that Officer Burnell should have ended his DUI evaluation of Warwick during the traffic stop because he exhibited no signs of impairment.

¶10.    At the conclusion of the trial, the court found Warwick guilty of driving under the influence of marijuana and driving a vehicle with illegally tinted or darkened windows. For the DUI charge, Warwick was sentenced to forty-eight hours' imprisonment, with the entirety

---

[2] The trial court declined to accept Corroto as an expert on the effects of alcohol and drugs on the human body.

of that period suspended on the condition that he successfully complete two years of probation. He also was ordered to pay a $900 fine, along with court costs, fees and assesssments, and was required to attend the Mississippi Alcohol Safety Education Program. For the window-tinting charge, Warwick was ordered to pay a fine of $200, as well as costs, fees, and assessments.

¶11. On appeal, the Madison County Circuit Court affirmed Warwick's convictions and sentences in all respects. Warwick now appeals to this Court, arguing that his DUI conviction[3] is against the weight and sufficiency of the evidence.

## STANDARD OF REVIEW

¶12. This Court reviews challenges to the legal sufficiency of evidence in the light most favorable to the verdict. **Bush v. State**, 895 So. 2d 836, 843 (Miss. 2005). This Court "must accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and must disregard evidence favorable to the defendant." **Anderson v. State**, 904 So. 2d 973, 977 (Miss. 2004). If any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt, this Court will not disturb the verdict. **Bush**, 895 So. 2d at 843.

¶13. In reviewing a challenge to the weight of the evidence, this Court will overturn a verdict only "when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." **Id.** at 844. As with a review of the sufficiency of the evidence, this Court must view the evidence in the light most favorable to

---

[3] Warwick does not appeal his window-tinting conviction.

7

the verdict. *Id.* If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial, but this remedy should be used only in exceptional cases where the evidence "preponderates heavily against the verdict." *Id.*

**DISCUSSION**

¶14. Warwick was convicted of violating Section 63-11-30(1)(d) of the Mississippi Code, which provides, "It is unlawful for any person to drive or otherwise operate a vehicle within this state who . . . is under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances Law[.]" Miss. Code Ann. § 63-11-30(1)(d) (Rev. 2013). The phrase "under the influence" commonly is understood to mean "driving in a state of intoxication that lessens a person's normal ability for clarity and control." *Leuer v. City of Flowood*, 744 So. 2d 266, 269 (Miss. 1999) (citing *Gov't of Virgin Islands v. Steven*, 134 F.3d 526, 528 (3d Cir. 1998)). Warwick's primary argument on appeal is that the mere presence of marijuana in his bloodstream, where there are no physical manifestations of influence, is insufficient evidence to support a conviction for driving under the influence. Thus, he argues that the trial court erred in denying his motion for a direct verdict. Alternatively, Warwick claims that his conviction is against the overwhelming weight of the evidence.

¶15. We find that the State presented sufficient evidence to prove that Warwick was driving under the influence of marijuana. While Warwick alleges that the State offered no evidence of "physical manifestations of influence," this argument is without merit. Officer Burnell observed Warwick's vehicle weave twice before pulling him over. Warwick's eyes

8

were bloodshot when he exited his vehicle, he failed the lack-of-convergence test, he exhibited eyelid tremors during the Romberg test, and he did not successfully complete the walk-and-turn test or finger-to-nose test. The Court of Appeals has found similar evidence sufficient to support a finding that the defendant was driving under the influence of marijuana. *See Weil v. State*, 936 So. 2d 400, 402 (Miss. Ct. App. 2006) (defendant exhibited bloodshot eyes, dilated pupils, slurred speech, and poor balance); *Beal v. State*, 958 So. 2d 254, 255 (Miss. Ct. App. 2007) (defendant was driving roughly thirty miles per hour over the speed limit and exhibited bloodshot eyes). Further, Officer Burnell, who was trained in various field sobriety testing techniques, and Lieutenant Sandridge, a certified DRE instructor, offered the opinion that he had been driving under the influence of marijuana. Lieutenant Sandridge testified that Warwick exhibited twelve indicators that he was under the influence of marijuana while undergoing the DRE evaluation. Finally, Harper testified that Warwick's blood tested positive for the acitive metabolite of marijuana, meaning that the drug would have had an impairing effect on Warwick when he was pulled over. This evidence, viewed in the light most favorable to the State, is sufficient for "any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt[.]" *Bush*, 895 So. 2d at 843.

¶16. We also find that Warwick's conviction was not against the weight of the evidence. Warwick argues that the State's evidence was substantially contradicted by Corroto's opinion that his bloodshot eyes, eyelid tremors, and lack of convergence could have been caused by his prescription medication or the energy drinks he had consumed, rather than marijuana. He

9

argues that this opinion was more credible than those offered by the State, because the State failed to present any evidence that he recently had possessed or consumed marijuana. These arguments are without merit, as the fact-finder – in this case, the trial court – is the sole judge of witness credibility. *Harris v. State*, 970 So. 2d 151, 157 (Miss. 2007). Where the trial court resolves conflicting evidence in making a finding of fact, this Court generally must affirm. *Stokes v. State*, 548 So. 2d 118, 122 (Miss. 1989). Officer Burnell and Lieutenant Sandridge presented detailed testimony supporting their opinions that Warwick had been driving under the influence of marijuana, and these opinions ultimately were corroborated by Warwick's blood tests. We find that allowing Warwick's conviction to stand would not "sanction an inconscionable injustice." *Bush*, 895 So. 2d at 843.

**CONCLUSION**

¶17.    For the foregoing reasons, we affirm Warwick's convictions and sentences.

¶18.    **CONVICTION OF DRIVING UNDER THE INFLUENCE, FIRST OFFENSE, IN CAUSE NUMBER CO-2013-0006, AND CONVICTION OF TINTED WINDOWS, SECOND OFFENSE, IN CAUSE NUMBER CO-2013-0007 AND SENTENCE OF FORTY-EIGHT (48) HOURS IN THE CUSTODY OF THE SHERIFF OF MADISON COUNTY, WITH SENTENCE STAYED AND SUSPENDED FOR A PERIOD OF TWO (2) YEARS UNLESS SOONER INVOKED, WITH CONDITIONS, AFFIRMED. APPELLANT SHALL PAY A FINE IN THE AMOUNT OF $900 AND A FINE IN THE AMOUNT OF $200 TO BE PAID ON OR BEFORE OCTOBER 24, 2013. APPELLANT SHALL PAY COURT COSTS, FEES AND ASSESSMENTS ON OR BEFORE OCTOBER 24, 2013. ALL PAYMENT OF FINES, COURT COSTS, FEES AND ASSESSMENTS ARE TO BE MADE A SPECIAL CONDITION OF PROBATION.**

**DICKINSON AND RANDOLPH, P.JJ., LAMAR, PIERCE, KING AND COLEMAN, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**KITCHENS, JUSTICE, DISSENTING:**

¶19.    Because the evidence at trial was insufficient to prove that Graham Warwick was "under the influence" of marihuana, I respectfully dissent.

¶20.    In cases in which this Court considers the sufficiency of the evidence, "the critical inquiry is whether the evidence shows 'beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.'" **Bush v. State**, 895 So. 2d 836, 843 (Miss. 2005) (quoting **Carr v. State**, 208 So. 2d 886, 889 (Miss. 1968)). We must consider whether, "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" **Bush**, 895 So. 2d at 843 (quoting **Jackson v. Virginia**, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

> Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render.

**Bush**, 895 So. 2d at 843 (quoting **Edwards v. State**, 469 So. 2d 68, 70 (Miss. 1985)).

¶21.    Warwick was charged under Mississippi Code Section 63-11-30(1)(d) with having driven "or otherwise operate[d] a motor vehicle within this state" while "under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances Act . . . ." Miss. Code Ann. § 63-11-30(1)(d) (2004).[4] The

---

[4]Under the 2015 revisions to this statutory section, the legislature altered the placement of "under the influence of any drug or controlled substance" to subsection (c) of

11

State bore the burden of proving, beyond a reasonable doubt, the following elements: (1) that Warwick drove or otherwise operated a motor vehicle, (2) within the State of Mississippi,[5] (3) while "under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances Act . . . ." *Id.*

¶22. Here, it is undisputed that Warwick was driving a vehicle and that he was driving within Madison County, Mississippi. The State further adduced proof that Warwick's blood tested positive for marihuana, a controlled substance the possession of which is prohibited under the Mississippi Controlled Substances Act. *See* Miss. Code Ann. § 41-29-113(c)(23)(A) (Supp. 2015); Miss. Code Ann. § 41-29-139(c) (Supp. 2015). But, as Warwick argues on appeal, the mere presence of marihuana in his body, without more, is insufficient to prove that he was "under the influence" of marihuana.

¶23. This Court has considered the meaning of "under the influence" in the context of Mississippi Code Section 63-11-30(1)(a), which proscribes "driv[ing] or otherwise operat[ing] a vehicle . . . under the influence of intoxicating liquor." *Leuer v. City of Flowood*, 744 So. 2d 266, 268 (Miss. 1999). We found that "'under the influence' is

Section 63-11-30(1). I have therefore cited the version of Section 63-11-30(1) in effect at the time of Warwick's trial.

[5] Mississippi Code Section 63-11-5(1) (Rev. 2013), the Mississippi Implied Consent Law, provides that "[a]ny person who operates a motor vehicle upon the public highways, public roads and streets of this state shall be deemed to have given his consent" to breath tests for alcohol concentration and to "chemical . . . tests of his breath, blood or urine for the purpose of determining the presence in his body of any other substance which would impair a person's ability to operate a motor vehicle." Miss. Code Ann. § 63-11-5(1) (Rev. 2013). Though not raised as an issue in this appeal, the State must prove that the person operating the motor vehicle within the State of Mississippi was doing so "upon the public highways, public roads and streets" thereof.

commonly understood to mean driving in a state of intoxication that lessens a person's normal ability for clarity and control." ***Leuer***, 744 So. 2d at 269 (citing ***Gov't of Virgin Islands v. Stevens***, 134 F.3d 526, 528 (3d Cir. 1998)). Moreover, "'[t]his common understanding is consistent with the obvious purpose of drunk driving statutes; i.e., to prevent people from driving unsafely due to an alcohol-induced diminished capacity.'" ***Leuer***, 744 So. 2d at 269 (quoting ***Stevens***, 134 F.3d at 528)).

¶24.    In the present case, the State bore the burden of proving, beyond a reasonable doubt, that Warwick was driving "under the influence" of marihuana. This required that the State not only adduce proof that Warwick had consumed the drug, but also that he was "driving in a state of intoxication" such that his "normal ability for clarity and control" was lessened. ***Leuer***, 744 So. 2d at 269 (quoting ***Stevens***, 134 F.3d at 528)).

¶25.    The State called Officer Tyler Burnell of the Madison Police Department as its first witness. While Officer Burnell did indicate that he saw Warwick's vehicle "weave" once "over the double yellow center line" and once more "within its lane of travel," he testified that, when the vehicle made a left turn, he observed that the side windows were tinted, in violation of Mississippi Code Section 63-7-59(2) (Rev. 2004), which prohibits persons from driving vehicles, any window of which is "so tinted or darkened, by tinted film or otherwise, that the interior of the vehicle is so obscured that a viewer with vision sufficient to qualify for a Mississippi driver's license cannot readily see into the interior of the vehicle by looking into it from outside the vehicle." The majority finds that "Officer Burnell observed Warwick's vehicle weave twice before pulling him over." (Maj. Op. ¶ 15). The alleged

13

"weaving" is not relevant to our analysis. According to Officer Burnell's testimony, it was not that Warwick's vehicle was weaving which gave rise to the stop, but that the windows on Warwick's vehicle were tinted in violation of Section 63-7-59(2).

¶26. The majority further finds sufficient evidence to support Warwick's conviction because his "eyes were bloodshot when he exited his vehicle, he failed the lack-of-convergence test, he exhibited eyelid tremors during the Romberg test, and he did not successfully complete the walk-and-turn test or finger-to-nose test." (Maj. Op. ¶ 15). Officer Burnell first testified regarding the several tests which led to Warwick's arrest. Without explaining its significance, Burnell testified that he conducted the "Romberg balance" test. Burnell stated that Warwick "exhibited eyelid tremors" and "estimated 30 seconds in 33 seconds," again without explaining the significance of those observations. Officer Burnell then performed a horizontal gaze nystagmus (HGN) test and "observed no indicators." Burnell then checked "for lack of convergence," through which he observed that Warwick's "left eye came in and then fish hooked down and out, meaning that it came in and looped in and out back toward the outside of his eye." Burnell testified that such an observation "is associated with . . . cannabis." Burnell then administered a walk-and-turn test: "I just had [Warwick] imagine a straight line." According to Burnell, Warwick "missed heel-to-toe" and "after he performed a correct turn, he stepped off the line and began a second series of nine steps without further incident." Concluding that Warwick was under the influence, Officer Burnell placed him under arrest.

¶27.    Warwick then was taken, in custody, to the Madison Police Department. Officer Burnell, a "drug recognition expert" (DRE) in training who had yet to achieve his certification, was under the supervision of Lieutenant Mark Sandridge, a DRE instructor. Officer Burnell and Lieutenant Sandridge[6] conducted further sobriety tests at the police department. Officer Burnell testified that Warwick's pulse was taken for the first time and registered at 110 beats per minute. The normal range, according to Officer Burnell, "would have been 60 to 90, meaning it was above." Officer Burnell continued:

> For the lack of convergence, we found it present, but the divided attention tests we observed for the Romberg balance, we observed eyelid tremors and then left leg tremors for the walk-and-turn. He missed heel-to-toe on step two for the first series and then he completed his turn as corrected—as instructed and demonstrated and then missed heel-to-toe on step two for the second series of nine.
>
> For the one-leg stand, he completed the test as instructed.  There was a slow internal clock. He counted to 21 in 30 seconds and then 23 in 30 seconds. They basically have to stand on the right—stand on the left, raise the right the first time, and then we do the opposite side; they stand on the right and raise the left, so you basically would do that test twice.

---

[6] It is noteworthy that neither Officer Burnell nor Lieutenant Sandridge was tendered or accepted as an expert in the field of drug recognition. Officer Burnell testified that he was a "drug recognition *expert* in training." Lieutenant Sandridge purported to have been certified as a drug recognition *expert*. In county court, defense counsel made objections to specific parts of Officer Burnell's testimony because Officer Burnell had not been qualified as a medical expert. In the post-trial motion for judgment notwithstanding the verdict (JNOV), defense counsel argued that Officer Burnell and Lieutenant Sandridge "were not accepted as expert witnesses, but they still testified to the effects that they believe this cannabis was having on our client." On appeal, defense counsel makes no argument concerning the testimony of Burnell and Sandridge regarding the purported physical manifestations of marihuana use. Such testimony is solely within the province of a qualified expert who has been accepted as such by the trial court.

The next test was a "modified finger-to-nose" test, which Warwick completed "three out of six times correctly." The next test, a "vital signs" test, indicated that Warwick's pulse was 110 beats per minute, that his blood pressure was 135 over 90, and that his temperature was 98.4. The second pulse reading, according to Burnell, was "above the normal range of what we would consider average."

¶28.    Officer Burnell and Lieutenant Sandridge then conducted a "dark room" examination in which they checked pupil size in normal room light, in near total darkness, and in direct light. According to Officer Burnell:

> [S]omebody may have a normal pupil size in room light, and then, like Mr. Warwick's case, he had a normal room light and a normal dark size, and then for direct light, you—the pupil will constrict down. And then . . . as is common with cannabis, it rebounds out or pulsates back out to a larger degree meaning that it constricted down to 3.5 millimeters and then pulsated out to 5 millimeters.

Burnell testified that such phenomena indicated "cannabis *use*." (Emphasis added.) Next, Warwick's oral and nasal cavities were checked, because an "inflamed and runny nose," along with the absence of hair in the nasal cavity, indicates cocaine use, according to Officer Burnell. Warwick's nasal cavity was clear. His oral cavity revealed "raised taste buds on the back of [Warwick's] tongue," which "is associated with cannabis *use* . . . ." (Emphasis added.) According to Officer Burnell, "Warwick's muscle tone was normal." A third pulse check indicated that Warwick's pulse was 112 beats per minute.

¶29.    The State next called Lieutenant Mark Sandridge, the "drug recognition expert" (DRE) instructor who had supervised Officer Burnell's examination of Warwick. He testified that he "just kind of took a backseat and observed to make sure that the integrity of the

16

evaluation and the program was upheld." He testified that "12 indicators out of 19 in the category of cannabis" were apparent from the evaluation of Warwick. He testified that "some indicators seen during the Romberg . . . . are indicators that we can see sometimes with cannabis *use*." (Emphasis added.)

¶30. Mississippi Crime Laboratory forensic toxicologist Emily Harper was tendered as an expert in forensic toxicology by the State and was accepted by the trial court. She confirmed that 2.3 nanograms per milliliter of tetrahydrocannabinol were present in Warwick's blood and "a different metabolite of the marijuana . . . was confirmed at 21 nanograms" per milliliter. Harper could not testify regarding "specifically what this level would have on a specific individual."

¶31. The State amply proved that Warwick had a precise amount of marihuana in his blood. But the evidence adduced by the State at trial is woefully insufficient to prove, beyond a reasonable doubt, that Warwick had been driving "under the influence" of marihuana. This Court's jurisprudence requires the State to adduce evidence that Warwick had been "driving in a state of intoxication that lessen[ed] [his] . . . normal ability for clarity and control." *Leuer*, 744 So. 2d at 269 (quoting *Stevens*, 134 F.3d at 528)). Officer Burnell's opinion testimony that the "totality of the circumstances" supported his conclusion that Warwick "was under the influence of cannabis" does not suffice. While some of the tests conducted by both Officer Burnell and Lieutenant Sandridge may have suggested that Warwick had used marihuana, proof of cannabis *use* alone is insufficient to prove that the usage had produced impairment.

17

¶32. Because the State failed to adduce evidence proving each and every element of the crime of driving under the influence of marihuana, this Court should reverse and render. I therefore respectfully dissent.