KITCHENS, Justice,
dissenting:
¶ 19. Because the evidence at trial was insufficient to prove that Graham Warwick was “under the influence” of marihuana, I respectfully dissent.
*1075 ¶ 20. In cases in which this Court considers the sufficiency of the evidence, “the critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.’” Bush v. State, 895 So.2d 836, 843 (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). We must consider whether, “‘after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.’ ” Bush, 895 So.2d at 843 (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
Should the. facts and inferences considered in a challenge to the sufficiency of the evidence “point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,” the proper remedy is for the appellate court to reverse and render.
Bush, 895 So.2d at 843 (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)).
¶ 21. Warwick was charged under Mississippi Code Section 63-11-30(1)(d) with having driven “or otherwise operate[d] a motor 'vehicle within this state” while “under the influence of-any drug or controlled substance, the possession 'of which is unlawful under the Mississippi Controlled Substances Act....” Miss.Code Ann. § 63-11-30(1)(d) (2004).[4] The State bore the burden of proving, beyond a reasonable doubt, the following elements: (1) that Warwick drove or otherwise operated a motor vehicle, (2) within the State of Mississippi,[5] (3)-while “under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances Act.Id.
¶ 22. Here, it is undisputed that Warwick was driving a vehicle and that he was driving within Madison County, Mississippi. The State further adduced proof that Warwick’s blood tested.positive for marihuana,- a controlled substance the possession of which is prohibited under the Mississippi Controlled Substances Act. See Miss.Code Ann. § 41-29-113(c)(23)(A) (Supp.2015); Miss.Code Ann. § 41-29-139(c) (Supp.2015). But, as Warwick argues on appeal, the mere presence of marihuana in his body, .without more, is insufficient to prove that he was “under the influence” of marihuana.
¶23. This Court has considered the meaning of “under the. influence” in the context of Mississippi Code .Section 63 — 11— 30(l)(a), which proscribes “driv[ing] or otherwise operating] a vehicle ... under the influence of intoxicating liquor.” Leuer v. *1076 City of Flowood, 744 So.2d 266, 268 (Miss.1999). We found that ‘“under the influence’ is commonly understood to mean driving in a state of intoxication that lessens a person’s normal ability for clarity and control.” Leuer, 744 So.2d at 269 (citing Gov't of Virgin Islands v. Steven, 184 F.3d 626, 628 (3d Cir.1998)). Moreover, “ ‘[t]his common understanding is consistent with the obvious purpose of drunk driving statutes; i.e., to prevent people from driving- unsafely due to an alcohol-induced diminished capacity.’ ” Leuer, 744 So.2d at 269 (quoting Steven, 134 F.3d at 528).
¶-24. In the present case, the State bore the burden of proving, beyond a reasonable doubt, that Warwick was driving “under the influence” of marihuana. This required that the State not only adduce proof that Warwick had consumed the drug, but also that he was “driving in a state of intoxication” such that his “normal ability for clarity and control” was- lessened. Leuer, 744 So.2d at 269 (quoting Steven, 134 F.3d at 528).
¶25. The State called Officer Tyler Burnell of the Madison Police Department as its first witness. While Officer Burnell did indicate that he saw Warwick’s vehicle “weave” once “over the double yellow center line” and once more “within its lane of travel,” he testified that, when the vehicle made á left turn, he observed that the side windows were tinted, in violation of Mississippi Code Section 63-7-59(2) (Rev.2004), which prohibits persons from driving vehicles, any window of which is “so tinted or darkened, by tinted film or otherwise, that the interior of the vehicle is so obscured that a viewer with vision sufficient to. qualify for a Mississippi driver’s license cannot readily see into the interior of the vehicle by looking into it from outside the vehicle.” The majority finds that “Officer Burnell observed Warwick’s vehicle weave twice before pulling, him over.” (Maj.Op. ¶ 15). The alleged “weaving” is not relevant to our analysis. According to Officer Bur-nell’s testimony, it was not that Warwick’s vehicle was weaving which gave rise to the stop, but that the windows on Warwick’s vehicle were tinted in violation of Section 63-7-59(2).
¶ 26. The majority further finds sufficient evidence to support Warwick’s conviction because his “eyes were bloodshot when he exited his vehicle, he failed the lack-of-convergence test, he exhibited eyelid tremors during the Romberg test, and he did not successfully complete the walk- .and-turn test or finger-to-nose test,” (Maj.Op. ¶ 15). Officer Burnell first testified regarding the several tests which led to Warwick’s arrest. Without explaining its significance, Burnell testified that he conducted the “Romberg balance” test. Burnell stated that Warwick “exhibited eyelid tremors” and “estimated 30 seconds in 33- secoftds,”- again without explaining the significance of those observations. Officer Burnell then performed a horizontal gaze nystagmus (HGN) test and “observed no indicators.” Burnell then checked “for lack of convergence,” through which he observed that Warwick’s “left eye- came in and then-fish hooked down and out, meaning that it came in-and- looped in and out back toward the outside of his eye.” Bur-nell testified that such an observation “is associated with ... cannabis.” Burnell then administered a walk-and-turn test: “I just had [Warwick] - imagine a straight line.” According to Burnell, Warwick “missed heel-to-toe” and “after he performed a correct turn, he stepped off the line and began a second series of nine steps without further incident.” Concluding that Warwick was under the influence, Officer Burnell placed him under arrest.
¶ 27. Warwick then was taken, in custody, to the Madison Police Department. *1077 Officer Burnell, a “drug recognition expert” (DRE) in training who had yet to achieve his certification, was under the supervision of Lieutenant Mark Sandridge, a DRE instructor. Officer Burnell and Lieutenant Sandridge[6] conducted further sobriety tests at,the police department. Officer Burnell testified that Warwick’s pulse was taken for the first time and registered at 110 beats per minute. The normal range, according to Officer Burnell, “would have been 60 to 90, meaning it was above.” Officer Burnell continued:
For the lack of convergence, we found it present, but the divided attention tests we observed for the Romberg balance, we observed eyelid tremors and then left leg tremors for the walk-and-turn. He missed heel-to-toe on step two for the first series and then he completed his turn as corrected — -as instructed and demonstrated and then missed heel-to-toe on step two for the second series of nine. ■ ^ . •
For the one-leg.stand, he completed the test as instructed. There was a slow internal clock. He counted to 21 in 30 seconds and then 23 in 30 seconds. They basically have to stand on the right — stand on the left, raise the right the first time, and then we do the opposite side; they stand on the right and raise the left, so you basically would do that test twice.
The next , test was a “modified finger-to-nose” test, which, Warwick completed “three out of six .times correctly.” . The next test, a “vital signs”- test, indicated that Warwick’s pulse was 110 beats per minute, that his blood pressure was 186 over 90, and that his temperature was 98.4. The second pulse reading, according to Burnell, was “above the normal range of what we would-consider average.”
¶28. Officer Burnell and ‘ Lieutenant Sandridge then conducted a “dark room” examination in which they checked pupil size in normal room light, in near total darkness, and in direct light. According to Officer Burnell:
[Sjomebody may have a normal pupil size in room light, and then, like Mr. Warwick’s case, he had a normal room light and a normal dark size, and then for direct' light, you — the pupil .will constrict down. And then ... ' as is common with cannabis, it rebounds out or pulsates back out to a larger degree ‘meaning that'it cOhstricted down to’3.5 millimeters and then pulsated out to 5 millimeters.
Burnell testified that such phenomena indicated “cannabis use.” (Emphasis added.) Next, Warwick’s oral and nasal cavities were checked, because an “inflamed and runny nose,” along with the absence of hair in the nasal cavity,-indicates cocaine use, according to Officer Burnell. Warwick’s nasal cavity was clear.' His oral cavity revealed “raised taste buds on the back of [Warwick’s] tongue,” which “is as *1078 sociated with cannabis use — ” (Emphasis added.)' According to Officer Burnell, “Warwick’s muscle tone was normal.” A third pulse check indicated that Warwick’s pulse was 112 beats per minute.
¶ 29. The State next called Lieutenant Mark Sandridge, the “drug recognition expert” (DRE) instructor who had' supervised Officer Burnell’s examination of Warwick. He testified that he “just kind of took a. backseat and observed to make sure that the integrity of the evaluation and the program was upheld.” He testified that “12 indicators out of-19 in the category of cannabis” were apparent from the evaluation of Warwick. He testified that “some indicators seen during the Romberg .... are indicators that we can see sometimes with cannabis use.” (Emphasis added.)
¶ 30. Mississippi Crime Laboratory forensic toxicologist Emily Harper was tendered as an expert in forensic toxicology by the State and was accepted by the trial court. She confirmed that 2.3 nanograms per milliliter of tetrahydrocannabinol were present in Warwick’s blood and “a different metabolite of the marijuana ... was confirmed at 21 nanograms” per milliliter. Harper could not testify regarding “specifically what this level would have on a specific individual.”
¶ 31. The State amply proved that Warwick had a precise amount of marihuana in his blood. But, the evidence adduced by the State at trial is woefully insufficient to prove, beyond a reasonable doubt, that Warwick had been driving “under the influence” of marihuana. This Court’s jurisprudence requires the State to adduce evidence that Warwick had been “driving in a state of intoxication that lessen[ed][his] normal ability' for clarity and control.” Leuer, 744 So.2d at 269 (quoting Steven, 134 F.3d at 528). Officer Burnell’s opinion testimony that the “totality of the circumstances” supported his conclusion that Warwick “was under the influence of cannabis” does not suffice. While some of the tests conducted by both Officer Burnell and Lieutenant Sandridge may have suggested that Warwick had used marihuana, proof of cannabis use alone is insufficient to prove' that the usage had producéd impairment.
¶ 32. Because the State failed to adduce evidence proving each and every element of the crime of. driving under the influence of marihuana, this Court should reverse and render. I therefore respectfully dissent.

. Under the 2015 revisions to this statutory section, the legislature altered the placement of "under the influence of any drug or controlled substance” to subsection (c) of Section 63-1-1-30(1). I have therefore cited the version of Section 63-11-30(1) in effect at the time of Warwick’s trial.

. Mississippi Code Section 63-11-5(1) (Rev. 2013), the Mississippi Implied Consent Law, provides that "[a]ny person who operates a motor vehicle upon the public highways/'public roads and streets of this state shall be deemed to have given his consent” to breath tests for alcohol concentration and to "chemical ... tests of his breath, blood or urine for the purpose of determining the presence-in his body of any other substance which would impair a person's ability to operate a motor vehicle.” Miss.Code Ann. § 63-11-5(1) (Rev. 2013). Though not raised as an issue in this appeal,-the State must prove that-the person operating the motor vehicle within the State of Mississippi was doing .so "upon the public highways, public roads and streets” thereof.

. It is noteworthy that neither-Officer Burnell .nor Lieutenant Sandridge was tendered or accepted as an expert in the field of drug recognition. Officer Burnell testified that he was a “drug recognition expert in training.” Lieutenant Sandridge purported to have been certified as a drug recognition expert. In county court, defense counsel made objections to specific parts of Officer Burnell's testimony because Officer Burnell had not been qualified as a medical expert. In the- post-trial motion for judgment notwithstanding the verdict (JNOV), defense counsel argued that Officer Burnell, and Lieutenant Sandridge "were not accepted as expert witnesses, but they still testified to the effects that they believe this cannabis was having on our client.” On appeal, defense counsel makes no argument concerning the testimony of Burnell and Sandridge regarding, the purported physical manifestations of marihuana use. .Such testimony is solely within the province of a quali fied expert who has been accepted as such by the trial court.