ISHEE, J.,
for the Court:
¶ 1. Xezavion Taylor was indicted by a Washington County grand jury for Count I, armed robbery; Count II, armed carjacking; Count III, kidnapping; Count IV, house burglary; Count V, possession of a weapon by a felon; and a sentence enhancement for using a firearm during the commission of the crimes. After a trial, the jury returned a guilty verdict on all counts. Taylor was then sentenced in the Washington County Circuit Court to twenty years for Count I, twenty years for Count II, twenty years for Count III, ten years for Count IV, five years for Count V, and a ten-year sentence enhancement for using a firearm during the commission of the crimes, with the sentences to run consecutively to each other, all in the custody of the Mississippi Department of Corrections (MDOC). Thereafter, Taylor filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a *592 new trial. His motion was denied. Taylor now appeals arguing: (1) the evidence was insufficient as a matter of law to prove that he committed burglary of a dwelling; (2) the trial court erred by giving the State’s jury instruction regarding the elements of the crimes, which effectively amended the indictment to include both April 16 and April 17 as the dates of the offenses; (3) the trial court erred by refusing his jury instruction regarding the identity of the culprit; (4) trial counsel’s performance constituted ineffective assistance of counsel; and (5) the trial court erred by denying his motion for a new trial.
FACTS AND PROCEDURAL HISTORY
¶ 2. Kendall Franklin, the victim in this case, heard a knock on his door at approximately 10:00 p.m. on April 16, 2009. Franklin lived in what he described as a “rooming house,” which was a house that contains four bedrooms, each of which was rented out to a separate individual. The tenants shared a bathroom and a kitchen. But their rooms were locked, and only the occupant of each room had a key to the room. When Franklin answered his door, he was greeted by Terry Johnson and a second individual whom Franklin did not know at the time, but who was later identified by Franklin as Taylor. Johnson then asked Franklin to drive him home, which Franklin agreed to do.
¶ 3. As Franklin drove the men to Johnson’s apartment, Taylor, who was in the back seat, pointed a gun at Franklin and ordered him to drive to the levee. Franklin followed his instruction. Upon their arrival at the levee, Taylor moved to the driver’s seat, Franklin moved to the front passenger seat, and Johnson sat in the back seat of the vehicle. Taylor then demanded money from Franklin; however, Franklin had none because he had left his wallet at home.
¶ 4. Taylor then began driving Franklin’s vehicle to various locations. At one point they picked up a fourth individual, but Franklin was unable to identify that individual. Taylor then drove to Franklin’s residence, at which point Johnson and the unidentified fourth person went inside while Taylor continued to hold Franklin at gunpoint. The men then stole various items from Franklin’s residence.
¶ 5. After leaving the rooming house, they met a second vehicle and placed the stolen items in that vehicle. Franklin was then taken back to the levee and forced to get in the trunk of his vehicle. The vehicle was driven to a second location with Franklin in the trunk. Franklin was eventually able to escape from the trunk, walk home, and call the police. He called the police shortly after midnight on April 17, 2009.
¶ 6. On November 23, 2009, Taylor and Johnson were indicted by the grand jury for Count I, armed robbery; Count II, armed carjacking; Count III, kidnapping; Count IV, house burglary; and Count V, possession of a weapon by a felon. They were also charged with a sentence enhancement for using a firearm during the commission of the armed robbery, armed carjacking, and kidnapping, pursuant to Mississippi Code Annotated section 97-37-37(1) (Supp.2012). On February 17, 2010, the trial court entered an order for a severance of the trials of the two men and for them to be tried separately.
¶ 7. Taylor’s trial began on May 3, 2010, and lasted two days. On May 4, 2011, the jury returned a guilty verdict on all five counts and the firearm enhancement. On May 20, 2011, Taylor was sentenced to twenty years for Count I, twenty years for Count II, twenty years for Count III, ten years for Count IV, five years for Count V, *593 and a ten-year sentence enhancement for using a firearm during the commission of the crimes, with the sentences to run consecutively to each other, all in the custody of the MDOC. Taylor then filed a motion for a JNOV or, in the alternative, a new trial, which was denied. Taylor now appeals.
DISCUSSION
I. Sufficiency of Evidence to Establish Each Element of the Crime of Burglary of a Dwelling
¶ 8. When considering the sufficiency of evidence on appeal, we must determine “whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.’ ” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). “[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 9. Taylor argues the evidence was insufficient to establish that he committed the crime of burglary of a dwelling. He asserts the term “dwelling house” as used by the legislature to constitute the burglary of a dwelling does not include Franklin’s room in the rooming house. Taylor further claims that Franklin’s room is more akin to the buildings and rooms covered by Mississippi Code Annotated section 97-17-33(1) (Rev.2006), which states:
Every person who shall be convicted of breaking and entering, in the day or night, any shop, store, booth, tent, warehouse, or other building or private room or office therein, water vessel, commercial or pleasure craft, ship, steamboat, flatboat, railroad car, automobile, truck or trailer in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale, deposit, or transportation, with intent to steal therein, or to commit any felony, or who shall be convicted of breaking and entering in the day or night time, any building within the curtilage of a dwelling house, not joined to, immediately connected with or forming a part thereof, shall be guilty of burglary, and imprisoned in the penitentiary not more than seven (7) years.
His contention is that Franklin’s room in the rooming house constitutes a “private room or office.”
¶ 10. Taylor concedes this issue was never raised before the trial court; however, he argues the issue should be reviewed under the plain-error doctrine. The plain-error doctrine is employed by this Court when the defendant’s substantive or fundamental rights are affected. Jenkins v. State, 75 So.3d 49, 57 (¶ 22) (Miss.Ct.App.2011) (citation omitted). The plain-error doctrine applies when there is “(i) an error at the trial level and (ii) such an error resulted in a manifest miscarriage of justice.” Stephens v. State, 911 So.2d 424, 432 (¶ 19) (Miss.2005) (citation omitted). This Court has previously found that when the crime charged was burglary of a dwelling, the State’s failure to prove the building burglarized was, in fact, a dwelling constituted plain error. Carr v. State, 770 So.2d 1025, 1029-30 (¶¶ 15-16) (Miss.Ct.App.2000). Accordingly, we will consider Taylor’s claim under the plain-error doctrine.
¶ 11. The elements of burglary of a dwelling, for which Taylor was convicted, are: “(1) the unlawful breaking and *594 entering of a dwelling; and (2) the intent to commit some crime when entry is attained.” Kirkwood, v. State, 52 So.3d 1184, 1187 (¶ 12) (Miss.2011) (citations omitted). The term “dwelling house” is defined as “a place where people dwell or reside.” Robinson v. State, 864 So.2d 1131, 1134 (Miss.1978). The intention of the dweller is the material consideration in determining whether a place constitutes a dwelling house. Id. Thus, for example, if an individual plans to permanently reside in a hotel or motel, that place is considered his dwelling. Id.
¶ 12. We find Franklin’s room in the rooming house constitutes a dwelling for the purposes of the statute. It is clear that the room was Franklin’s residence; he paid rent and was the only individual with a key to the room. In addition, all of his belongings were in the room. Furthermore, throughout his testimony Franklin repeatedly referred to his room as his “home.” There is no evidence that the room was not his permanent residence or that he did not plan to remain there. Accordingly, there was sufficient evidence to support Taylor’s burglary conviction. This issue is without merit.
II. Elements Jury Instruction
¶ 13. Taylor argues the trial court erred by giving the State’s jury instruction referring to the elements of the crimes charged, because it informed the jury that it should find Taylor guilty if it determined the offenses charged occurred “on or about April 16, 2009-April 17, 2009.” Taylor asserts the “elements jury instruction” effectively amended the indictment, which alleged the crimes occurred on or about April 17, 2009. However, the State’s revised demand for notice of an alibi stated the time and date of the offense was April 16, 2009 at 10:15 p.m. Taylor’s alibi covered the time period from approximately 10:00 p.m. on April 16, 2009, until the next morning on April 17, 2009. Taylor argues he was prejudiced by the instruction because it negated the evidence he presented at trial of his alibi for April 16, 2009. In addition, he asserts that he had no opportunity to defend himself against the April 17, 2009 date because the jury instruction came after the defense had rested.
¶ 14. “The indictment is not required to state the correct date as long as it does not invalidate the indictment, and the time element does not have to be specific as long as it is within reasonable limits.” Burbank v. State, 800 So.2d 540, 544 (¶ 8) (Miss.Ct.App.2001) (citing Morris v. State, 595 So.2d 840, 842 (Miss.1991)). Here, the indictment stated the crimes occurred “on or about April 17, 2009,” and the evidence presented at trial showed the crimes occurred between 10:00 p.m. on April 16, 2009, and shortly after midnight on April 17, 2009. The elements jury instructions listed the offense date as “on or about April 16, 2009-April 17, 2009.”
¶ 15. The date provided in the indictment reasonably covered the time period of April 16, 2009, to April 17, 2009. Thus, the dates listed in the elements jury instruction fell within the time period provided for in the indictment and conformed to the evidence presented at trial. Because the dates listed in the elements jury instructions were covered by the time period given in the indictment, they did not effectively amend the indictment.
¶ 16. The Mississippi Supreme Court has noted that “notice of a specific date is often essential to the preparation of a defense—especially where an alibi defense is relied on.” Wilson v. State, 515 So.2d 1181, 1183 (Miss.1987). Although the indictment listed “on or about April 17, 2009,” the State’s revised demand for notice of an alibi listed “on or about April 16, 2009, at approximately 2215 hours” as the *595 offense date and time. Taylor’s alibi covered the time period from the night of April 16, 2009, until the morning of April 17, 2009. This conformed to both the evidence presented at trial of the time period when the offense occurred and the time period listed in the jury instructions. Hence, he has not show any prejudice by the dates listed in the jury instructions because they were, in fact, covered by the alibi he presented at trial.
¶ 17. Moreover, Taylor does not assert that the addition of April 16, 2009, was in error; he simply asserts the jury instructions should not have included April 17, 2009. This argument is misguided because April 17, 2009, is the date actually listed in the indictment. Furthermore, his alibi covered both the night of April 16, 2009, and the morning of April 17, 2009. Accordingly, Taylor has not shown that the elements jury instructions amended the indictment or that he was prejudiced. This issue is without merit.
III. Identity Jury Instruction
¶ 18. The standard of review for the giving or refusal of jury instructions is an abuse of discretion. Victory v. State, 83 So.3d 370, 373 (¶ 12) (Miss.2012) (citation omitted). When reviewing the giving or refusal of jury instructions, we do not view the jury instructions in isolation, but instead we consider them as a whole. Rushing v. State, 911 So.2d 526, 537 (¶ 24) (Miss.2005) (citation omitted).
¶ 19. Defendants clearly have the right to a fair trial; included in that right is a proper jury instruction on the theory of defense for which the defendant presented proof. Mitchell v. State, 90 So.3d 584, 589 (¶ 10) (Miss.2012) (citation omitted). The trial court may refuse the requested jury instructions if they (1) incorrectly state the law, (2) are covered elsewhere in the instructions, or (3) are without evidentiary foundation. Id.
¶ 20. With regard to a request for a jury instruction referencing the culprit’s identity, the trial court is required to provide the instruction when “the identification of the accused rests entirely upon the testimony of a single witness.” Tugle v. State, 68 So.3d 691, 696 (¶ 21) (Miss.Ct.App.2010) (quoting Thomas v. State, 766 So.2d 809, 811 (¶ 8) (Miss.Ct.App.2000)). “However, ... a defendant is only entitled to such an instruction if requested and if he is identified as the guilty party by, at most, one witness to his alleged crime.” Id. at (¶ 22). Furthermore, regarding jury instructions dealing with eyewitness identification, the supreme court has stated: “‘[T]he general instruction given to the jury to the effect that the State has the burden of proving each element of the offense charged beyond a reasonable doubt,’ includes the misidentification issue.” Brunner v. State, 37 So.3d 645, 648 (¶ 14) (Miss.Ct.App.2009) (quoting Smith v. State, 802 So.2d 82, 88 (¶ 20) (Miss.2001)).
¶ 21. Taylor argues the trial court erred by refusing his proffered “identity jury instruction,” proposed jury instruction D-l. Proposed jury instruction D-l stated: “The [c]ourt instructs the jury that in any criminal case, the [S]tate must not only prove the essential elements of the [S]tate’s case but must also prove the identity of the defendant as the perpetrator of the offense or offenses.” Taylor claims his theory of defense was that he was misidentified; therefore, the jury instruction should have been given.
¶ 22. Mississippi law is clear that a defendant is entitled to an identity jury instruction when the case rests entirely on a single witness’s testimony. Here, while there was only one eyewitness, Taylor’s fingerprint was also found at the crime scene. Thus, the entire case did not hinge *596 on the single witness’s testimony, and the trial court was not required to include the identity jury instruction.
¶ 23. Although a misidentification instruction was not required, the jury instructions given nonetheless included the misidentification issue. Jury Instructions S-1A, S-3A, S^LA, S-5A, and S-6A informed the jury that the State had to prove beyond a reasonable doubt that between April 16, 2009, and April 17, 2009, Taylor had committed the elements of armed robbery, armed carjacking, kidnapping, house burglary, and possession of a firearm by a felon. Jury Instruction D-8 advised the jury: “You have the duty to determine the believability of the witnesses. In performing this duty, you must consider each witnesses] intelligence, the witnesses] ability to observe and accurately remember, the witnesses] sincerity, and the witnesses] demeanor while testifying.” As in Brunner, these jury instructions, taken together, encompass the theory of misidentification. Accordingly, this issue is without merit.
IV. Ineffective Assistance of Counsel
¶ 24. To establish a claim of ineffective assistance of counsel, the defendant must show (1) counsel’s performance was deficient, and (2) the deficiency prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). “Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance[.]” Id. at 689, 104 S.Ct. 2052. Therefore, the defendant must overcome the presumption that counsel’s conduct could be considered sound trial strategy. Id. Moreover, to establish a claim of ineffective assistance of counsel, the defendant must show that but for counsel’s errors, the outcome of the proceedings would have been different. Id. at 694, 104 S.Ct. 2052.
¶ 25. Taylor argues his trial counsel was ineffective based on the trial counsel’s failure to (1) request a jury instruction regarding Taylor’s alibi, (2) lay a proper foundation to impeach Franklin’s testimony regarding his conflicting accounts of the night in question, (3) object to improper rebuttal testimony regarding Taylor’s alibi, and (4) effectively confront the State’s fingerprint expert.
A. Alibi Jury Instruction
¶ 26. Taylor asserts that he introduced two theories of defense at trial — alibi and misidentification. Although defense counsel requested a jury instruction on the misidentification issue, which was refused, he failed to request an “alibi instruction.” Taylor argues he was prejudiced by defense counsel’s failure to request an alibi instruction because it resulted in the jury not being instructed regarding one of his theories of defense.
¶ 27. Traditionally, trial counsel’s decision regarding whether to request certain jury instructions is considered trial strategy. See Smiley v. State, 815 So.2d 1140, 1148 (¶ 31) (Miss.Ct.App.2001) (citation omitted). As noted above, the defendant must overcome the presumption that trial counsel’s decision is sound trial strategy. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. While we will not theorize regarding what the exact trial strategy was, it is conceivable that, after hearing the alibi witnesses testify, trial counsel decided to focus the theory of defense around the misidentification issue, for which a jury instruction was requested. Thus, we cannot conclude that Taylor’s trial counsel’s failure to request an alibi jury instruction does not fall under the umbrella of sound trial strategy. This issue is without merit.
*597 B. Proper Foundation to Impeach Franklin’s Testimony
¶ 28. Taylor argues his trial counsel failed to lay the proper foundation to impeach Franklin regarding prior inconsistent statements he had given to the police, prior inconsistent trial testimony given during Johnson’s trial, and prior inconsistent testimony given during the preliminary hearing. Trial counsel was allowed to present a proffer regarding some of the inconsistencies; however, he was unable to cross-examine Franklin in front of the jury about the inconsistencies because he failed to lay the proper foundation under Mississippi Rule of Evidence 613. Taylor asserts this denied him the right of confrontation guaranteed by the Sixth Amendment.
¶ 29. We cannot say that the trial counsel’s failure to lay the proper foundation to impeach Franklin’s testimony was not trial strategy. Although Franklin’s testimony was not impeached by his prior inconsistent statements, trial counsel called Robert Gibson, the officer who took Franklin’s statement, as a defense witness at trial. Trial counsel attempted to elicit testimony from Officer Gibson regarding Franklin’s statements on the night of the incident. However, the trial judge would only let him question Officer Gibson about the length of time Franklin was in the trunk of the vehicle. Trial counsel was allowed to proffer the other testimony he sought to introduce. Thus, we cannot say that it was not trial strategy to attempt to introduce the inconsistencies through Officer Gibson rather than impeach Franklin, even though the inconsistencies ultimately were not allowed. This issue is without merit.
C. Improper Rebuttal Testimony
¶ 30. Taylor next claims his trial counsel’s failure to object to improper rebuttal testimony regarding his alibi constitutes ineffective assistance of counsel. He asserts the State’s introduction of rebuttal witnesses violates Mississippi Rules of Evidence 401 and 613(b). Therefore, he argues his trial counsel should have objected to the introduction of the evidence.
¶ 31. Taylor alleged he was at the home of Shelia Scullark on the night in question until the next morning. Scullark testified that she asked Taylor to stay with her because she had an altercation with her boyfriend that night. After the defense called its two alibi witnesses, the State called Kevin Terry, a police officer with the Greenville Police Department (GPD), and Cathy Drake, the custodian of records for the GPD. Officer Terry testified that he was dispatched to Scullark’s house on April 5, 2009, regarding a domestic disturbance; however, he was not called to her home on April 16, 2009. Drake testified that the GPD received a phone call reporting a domestic situation at Scullark’s residence on April 5, 2009, but that no call was received on the night in question.
¶ 32. The Mississippi Supreme Court has stated that “ ‘counsel’s choice of whether or not to ... make certain objections fall[s] within the ambit of trial strategy' and cannot give rise to an ineffective assistance of counsel claim.” Powell v. State, 806 So.2d 1069, 1077 (¶ 18) (Miss.2001). While the testimony presented did indicate that the police were not called to Scullark’s house on the night of April 16, 2009, it did establish there had been domestic issues there in the past. Thus, although the testimony appeared to discredit one portion of Taylor’s alibi, it strengthened his reason for going to Scul-lark’s house on the night in question. By establishing that Scullark and her boyfriend had disputes in the past, it bolstered Taylor’s claim that he went to Scullark’s house because of a domestic dispute. Accordingly, Taylor has failed to show that his trial counsel’s decision falls outside the *598 ambit of trial strategy. This issue is without merit.
D. State’s Fingerprint Expert
¶ 33. Finally, Taylor asserts his trial counsel was ineffective for failing to challenge the State’s fingerprint expert by either questioning the fingerprint expert about the challenges and problems associated with fingerprint identification or hiring a defense expert to challenge the State’s expert’s findings. The State’s fingerprint expert, Shannon Roy, testified regarding a fingerprint found on the rear driver’s side quarter panel of Franklin’s vehicle. She stated that the fingerprint matched a known fingerprint of Taylor’s.
¶ 34. “ ‘[C]ounsel’s choice of whether or not to ... call witnesses [or] ask certain questions ... fall[s] within the ambit of trial strategy’ and cannot give rise to an ineffective assistance of counsel claim.” Powell, 806 So.2d at 1077 (¶ 18). Accordingly, the decision to question the fingerprint expert about the reliability of fingerprints or to acquire a defense fingerprint expert falls within trial strategy. When questioning the fingerprint expert about the reliability of fingerprint analysis, even if negative aspects regarding the science were introduced, the reliability of fingerprint analysis would almost certainly have been noted as well. Furthermore, if trial counsel had called a defense expert, that expert may have agreed with the State’s fingerprint expert’s findings, thus strengthening the State’s case. Accordingly, this issue is -without merit.
V. Denial of Motion for New Trial
¶ 35. A motion for a new trial challenges the weight of the evidence. See Bush, 895 So.2d 836, 844 (¶ 18) (citation omitted). Appellate courts “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. When reviewing the denial of a motion for a new trial, this Court must view the evidence in the light most favorable to the verdict. Id. Taylor’s entire argument regarding the denial of his motion for a new trial is contained in one paragraph of his brief in which he argues the verdict was against the overwhelming weight of the evidence because it rested entirely on the conflicting testimony of a single eyewitness and one distorted fingerprint.
¶ 36. Here, the victim in the case testified extensively about the events on the night in question and identified Taylor as the perpetrator. The jury “may believe or disbelieve, accept or reject the utterances of any witness.” Conley v. State, 790 So.2d 773, 807 (¶ 138) (Miss.2001) (citation omitted). In this case, the jury chose to believe Franklin’s testimony. Furthermore, Taylor’s fingerprint was found in Franklin’s car, which was testified to by an expert. Accordingly, this issue is without merit.
¶ 37. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, ARMED ROBBERY; COUNT II, ARMED CARJACKING; COUNT III, KIDNAPPING; COUNT IV, HOUSE BURGLARY; AND COUNT V, POSSESSION OF A FIREARM BY A FELON AND SENTENCES OF TWENTY YEARS FOR COUNT I, TWENTY YEARS FOR COUNT II, TWENTY YEARS FOR COUNT III, TEN YEARS FOR COUNT IV, FIVE YEARS FOR COUNT V, AND A TEN-YEAR FIREARM ENHANCEMENT, WITH THE SENTENCES IN ALL COUNTS TO RUN CONSECUTIVELY TO EACH OTHER, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL *599 COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., NOT PARTICIPATING.