# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01424-COA

BENNIE BEAL                                                              APPELLANT

v.

STATE OF MISSISSIPPI                                                     APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/17/2014 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN ELIZABETH PRIDGEN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF MURDER, WITH A FIREARM ENHANCEMENT, AND SENTENCED TO FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWENTY YEARS TO SERVE, TWENTY YEARS SUSPENDED, AND FIVE YEARS OF SUPERVISED PROBATION |
| DISPOSITION: | AFFIRMED - 07/19/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LEE, C.J., FOR THE COURT:**

¶1.     Bennie Beal was convicted of deliberate-design murder, with a firearm enhancement, and sentenced to forty years in the custody of the Mississippi Department of Corrections (MDOC), with twenty years to serve, twenty years suspended, and five years of supervised

probation. On appeal, Beal argues that the evidence was insufficient to support the verdict and that his trial counsel was ineffective for failing to request a castle-doctrine jury instruction. We find no error and affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2. On September 5, 2011, Latoya Travis went to pick up her sixteen-year-old sister, Evonye, so Evonye could go pay her cellular phone bill. Latoya's thirteen-year-old brother, Demarco Travis, was a passenger in the car. When Latoya arrived, the three siblings encountered their cousins, sixteen-year-old Beal and seventeen-year-old Bennie Banks. The two brothers asked to ride with the Travises on their errands, and Latoya agreed.

¶3. Evonye suggested that Latoya stop at the nearby Shell gas station on Terry Road in Jackson, Mississippi, to purchase gas for Latoya's car. Evonye provided $10—$5 for gas and $5 for cigarettes. Beal went inside the store, purchased cigarettes, and gave the clerk $5 for the gas, but when he went outside, the pump would not turn on. While Beal waited at the pump, Banks went to ask the clerk to turn on the pump. The clerk activated the pump, but the pump failed to shut off automatically at $5. Beal pumped $9.74 worth of gas. Beal then got into the backseat of Latoya's car and sat in the middle.

¶4. The store's owner, forty-nine-year-old Dilip Patel, came out of the store, demanding payment of the remaining $4.74. At this point, the teens were all sitting in LaToya's green Volvo, except Banks, who was trying to enter the backseat on the driver's side. They claim that Evonye tried to pull out her wallet to pay Patel, but Patel walked to the passenger-side backseat door, reached over Demarco, and began hitting and pulling on Beal. Although Patel

2

was unarmed, the teens said another man also came out of the store and was standing behind Patel with a gun "on his waist" or "on his side."[1]

¶5.    Two other eyewitnesses, Chris Nasif and Caleb Rhymes, dispute this testimony. Nasif, a salesman who routinely called on the gas station, said he overheard the clerk tell Patel he thought someone was trying to steal gas, and he saw Patel go outside. Nasif recorded the license-plate number of Latoya's green Volvo in case they attempted to leave without paying. Rhymes, a patron, also saw Patel walk up to the Volvo. Both Nasif and Rhymes said that Patel never hit Beal but was merely trying to get Beal to come inside and pay.

¶6.    While Patel was confronting Beal, Beal reached into his waistband and pulled out a .25-caliber handgun he had found at his grandmother's home. He shot at Patel several times. One of the bullets hit Patel directly in the forehead. Patel fell to the ground and died. Latoya testified she believed the gunshots were from the man standing behind Patel, so she immediately sped away from the store. None of the other teens knew Beal was carrying a weapon. They continued with their errands and returned to their grandmother's home. Latoya parked behind the house.

¶7.    Jackson police officers were dispatched to the scene of the shooting. Sergeant Lance Felton, one of the officers who responded, canvassed the neighborhood near the gas station, looking for the green Volvo described by witnesses. Sergeant Felton was familiar with the

---

[1] Jackson police later found a .40-caliber Smith & Wesson handgun inside the store. It belonged to one of the store's coowners and was located on the clerk's side of the plexiglass at the counter.

3

family in question and had a good rapport with them; so when he spotted Latoya and Evonye, and they appeared to be surprised by his presence, he stopped to question them. He then noticed the green Volvo and called for assistance. The family members cooperated with police, providing statements. Beal, who had no prior criminal record, was arrested and confessed that he shot Patel because he felt threatened and was "paranoid and didn't know what to do when the man was hitting him."

¶8.    Beal was charged with deliberate-design murder, with a firearm enhancement. A jury trial was held in Hinds County Circuit Court on December 2-4, 2013, and Beal was found guilty as charged. Beal faced a potential life sentence. However, because he was a minor, he was entitled to a hearing under the mandates of *Miller v. Alabama*, 132 S. Ct. 2455 (2012), prior to sentencing. Effective July 1, 2013, the Legislature amended the murder statute to provide new offenses of first- and second-degree murder. Beal waived the *Miller* hearing in exchange for a reduced sentence under the second-degree-murder sentencing statute. *See* Miss. Code Ann. § 97-3-21(2) (Rev. 2014) (stating that the jury can sentence the defendant to life for second-degree murder, but if the sentence is set by the judge, the term shall not be less than twenty nor more than forty years). Beal was sentenced to forty years in the custody of the MDOC, with twenty years to serve, twenty years suspended, and five years of supervised probation.

## DISCUSSION

### I.    Sufficiency of the Evidence

¶9.    Beal argues that, under the circumstances of this case, the jury should have been

4

instructed under the castle doctrine that he was presumed to have feared for his life at the time he shot Patel. *See* Miss. Code Ann. § 97-3-15(3)-(4) (Rev. 2014); *Newell v. State*, 49 So. 3d 66, 74 (¶22) (Miss. 2010) (The castle doctrine "creates a presumption of fear and abridges a duty to retreat in certain prescribed circumstances."). Beal contends that in light of this presumption of fear, the evidence did not support his murder conviction, and the jury's verdict should be reversed and rendered. Alternatively, Beal asserts that, at the most, he was guilty of manslaughter.

¶10.    Despite Beal's argument on appeal regarding the castle doctrine's presumption of fear, we note that Beal did not request nor was he given a castle-doctrine jury instruction at trial. Rather, he proceeded under a theory of self-defense, for which no presumption of fear is given. Beal's failure to request a castle-doctrine jury instruction precludes review of this issue on appeal. *See King v. State*, 857 So. 2d 702, 717 (¶24) (Miss. 2003) ("A trial court has no duty to give unrequested instructions. Therefore, this contention is procedurally barred."). Further, as will be discussed in issue two, the evidence did not support the application of the castle doctrine. Because Beal did not request, nor was he entitled to, a jury instruction on the presumption of fear contained in the castle doctrine, we will examine Beal's sufficiency-of-the-evidence argument with regard to his murder conviction under the instructions and law presented to the jury.

¶11.    In determining whether the evidence at trial is sufficient to sustain a conviction, we must examine "whether the evidence shows 'beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element

5

of the offense existed[.]'" *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (quoting

*Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968)). "[A]ll evidence supporting the guilty

verdict is accepted as true, and the State must be given the benefit of all reasonable

inferences that can be drawn from the evidence." *Graham v. State*, 185 So. 3d 992, 1003

(¶32) (Miss. 2016) (quoting *Galloway v. State*, 122 So. 3d 614, 665 (¶168) (Miss. 2013)).

¶12. When reviewing the sufficiency of the evidence, we will reverse and render a

conviction only if "the facts and inferences . . . 'point in favor of the defendant on any

element of the offense with sufficient force that reasonable [jurors] could not have found

beyond a reasonable doubt that the defendant was guilty[.]'" *Bush*, 895 So. 2d at 843 (¶16)

(quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)). However, if "'reasonable

fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions

on every element of the offense,' the evidence will be deemed to have been sufficient." *Id.*

(quoting *Edwards*, 469 So. 2d at 70).

¶13. To support Beal's deliberate-design murder conviction, the evidence must be

sufficient to show "beyond a reasonable doubt that (1) [Beal] killed [Patel], (2) without the

authority of law, and (3) with deliberate design to effect [Patel's] death." *Jones v. State*, 154

So. 3d 872, 880 (¶26) (Miss. 2014); Miss. Code Ann. § 97-3-19(1)(a) (Supp. 2015). The

supreme court has defined "deliberate design" as follows:

> "Deliberate design" is synonymous with "malice aforethought" and connotes
> an intent to kill. Deliberate design to kill a person may be formed very
> quickly, and perhaps only moments before the act of consummating the intent.
> It is well[]established that malice, or deliberate design, may be inferred from
> the use of a deadly weapon. Deliberate design, as a matter of law, may be
> inferred through the intentional use of any instrument which[,] based on its

6

manner of use, is calculated to produce death or serious bodily injury.

*Holliman v. State*, 178 So. 3d 689, 698 (¶19) (Miss. 2015) (internal citations and quotation marks omitted). Deliberate design is inferred by "the acts of the person involved at the time, and by showing the circumstances surrounding the incident." *Id.* (quoting *Boyd v. State*, 977 So. 2d 329, 335 (¶23) (Miss. 2008)). "If sufficient evidence exists that the shooter pulled the trigger with intent to kill, then the killing is [deliberate-design] murder." *Id.* at 699 (¶22).

¶14.    After paying $5 for gas at the Shell station, Beal pumped $9.74 worth of gas. He then got back into Latoya's car and sat in the middle of the backseat. Patel was alerted that someone was trying to steal gas. Patel ran out to confront Beal. Beal heard Patel say, "you got to pay me." It is disputed whether a physical altercation took place between Patel and Beal after this. In his statement to police, Beal stated that Patel "pull[ed] his shirt and when [he] pulled away[,] [Patel] hit [him] in the face." Beal's witnesses—Latoya, Evonye, and Demarco—also testified that Patel leaned into the car through the back passenger door, pulled Beal's shirt, and hit him. However, two other witnesses present at the gas station testified Patel did not hit anyone. Rather, they testified that Patel verbally confronted Beal and was shaking his index finger up and down at Beal. Also, Detective Obie Wells, who saw Beal shortly after the incident occurred, testified Beal had no visible injuries or any tears to his clothing that were consistent with Beal's version of events.

¶15.    Shortly after the altercation began, Beal reached into his waistband, pulled out a concealed gun he had taken from his grandmother's home and was illegally carrying, and shot at Patel multiple times, fatally hitting him once in the forehead. Beal then dropped the

7

gun in the gas-station parking lot and fled with the other teens. He went about his business and did not report the incident to anyone. Beal does not contest that he shot Patel, and he admitted in his statement to police that he knew Patel was unarmed. He also admitted to police that Patel was outside the car when he shot him. Also, in his statement to police, Beal described a prior altercation with Patel, stating, "in June[,] I paid for some gas and [Patel] stated the gas already pumped, so my sister just left and went to the gas station across the street."

¶16.   Viewing the evidence in the light most favorable to the State and taking the evidence supporting the verdict and any reasonable inferences as true, we find that a rational jury could have concluded that Beal was guilty of murder beyond a reasonable doubt and did not act in self-defense. Because we find the evidence sufficient to support Beal's murder conviction, we need not address his alternative argument that the evidence, at the most, supported a manslaughter conviction. This issue is without merit.

## II.    Ineffective Assistance of Counsel

¶17.   Beal argues his counsel was ineffective for failing to request a castle-doctrine jury instruction. To prove his counsel was ineffective, Beal must show (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. A strong but rebuttable presumption exists that counsel's performance was effective. *Gilley v. State*, 748 So. 2d 123, 129 (¶20) (Miss. 1999). "To overcome this presumption, 'the defendant must show that there is a

8

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

¶18. "Attorneys are permitted wide latitude in their choice and employment of defense strategy." *Hiter v. State*, 660 So. 2d 961, 965 (Miss. 1995). "Traditionally, trial counsel's decision regarding whether to request certain jury instructions is considered trial strategy." *Taylor v. State*, 109 So. 3d 589, 596 (¶27) (Miss. Ct. App. 2013). Further, when reviewing jury instructions on appeal, this Court does "not review jury instructions in isolation; rather, we read them as a whole to determine if the jury was properly instructed." *Wilson v. State*, 967 So. 2d 32, 36 (¶11) (Miss. 2007) (citation omitted). "When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Id.* (citation omitted). "Our law is well settled that jury instructions are not given unless there is an evidentiary basis in the record for such." *Dedeaux v. State*, 630 So. 2d 30, 33 (Miss. 1993).

¶19. The castle doctrine is set out in Mississippi Code Annotated section 97-3-15(3)-(4). The castle doctrine, as revised effective July 1, 2006, "curtailed the duty to retreat and created a presumption that the defendant reasonably feared imminent death, great bodily harm, or the commission of a felony upon him from a person who has unlawfully and forcibly entered the immediate premises of a dwelling, [occupied vehicle, business, or place of employment]." *Newell*, 49 So. 3d at 74 (¶22) (quoting *Johnson v. State*, 997 So. 2d 256, 260 n.2 (Miss. Ct. App. 2008)). The castle doctrine states:

> (3) A person who uses defensive force shall be presumed to have reasonably feared imminent death or great bodily harm, or the commission of a felony

9

upon him or another or upon his dwelling, or against a vehicle which he was occupying, or against his business or place of employment or the immediate premises of such business or place of employment, if the person against whom the defensive force was used, was in the process of unlawfully and forcibly entering, or had unlawfully and forcibly entered, a dwelling, occupied vehicle, business, place of employment or the immediate premises thereof or if that person had unlawfully removed or was attempting to unlawfully remove another against the other person's will from that dwelling, occupied vehicle, business, place of employment or the immediate premises thereof and the person who used defensive force knew or had reason to believe that the forcible entry or unlawful and forcible act was occurring or had occurred. This presumption shall not apply if the person against whom defensive force was used has a right to be in or is a lawful resident or owner of the dwelling, vehicle, business, place of employment or the immediate premises thereof or is the lawful resident or owner of the dwelling, vehicle, business, place of employment or the immediate premises thereof or if the person who uses defensive force is engaged in unlawful activity or if the person is a law enforcement officer engaged in the performance of his official duties[.]

(4) A person who is not the initial aggressor and is not engaged in unlawful activity shall have no duty to retreat before using deadly force under subsection (1)(e) or (f) of this section if the person is in a place where the person has a right to be, and no finder of fact shall be permitted to consider the person's failure to retreat as evidence that the person's use of force was unnecessary, excessive or unreasonable.

Miss. Code Ann. § 97-3-15(3)-(4).

¶20. Two prongs must be satisfied for the castle doctrine to apply. Under the first prong, the defendant must show three things: (1) he was "where he had a right to be," (2) he was "not the immediate provoker and aggressor," and (3) he was "not engaged in unlawful activity." *Newell*, 49 So. 3d at 74 (¶22) (citing Miss. Code Ann. § 97-3-15(4)). If these conditions are met, then under the second prong, the defendant "is presumed to have reasonably feared imminent death or great bodily harm or the commission of a felony upon him," if the jury finds any of the circumstances of 97-3-15(3) apply—that is, if the person is

10

in his dwelling, a vehicle, or place of business or employment, or the immediate premises thereof, and the person against whom defensive force is used was in the process of unlawfully and forcibly entering the premises or attempting to remove another from such premises. *Newell*, 49 So. 3d at 74 (¶22).

¶21.    The first prong of the castle doctrine clearly states that the presumption in prong two "shall not apply . . . if the person who uses defensive force is engaged in unlawful activity[.]" Miss. Code Ann. § 97-3-15(3). Beal, through his own admission, was engaged in unlawful activity when he shot Patel. It is undisputed that Beal was in violation of Mississippi Code Annotated section 97-37-14(1) (Rev. 2014), possession of a handgun by a person under eighteen. Beal was sixteen years old at the time of the shooting, and he admitted he took the gun from his grandmother's house. He then concealed the gun in the waistband of his pants and used the gun in the commission of the murder. In Beal's motion for a directed verdict, Beal's counsel recognized the violation. The trial judge asked, "is the defendant entitled at [sixteen] to have a gun in his possession at all?" Counsel responded, "No, Your Honor, he is not authorized to do so." Also, Beal was in violation of Mississippi Code Annotated section 97-32-9 (Rev. 2014), purchase of tobacco by a minor, as he was under eighteen when he purchased cigarettes at Patel's store. Further, Beal was arguably in the process of stealing gas from Patel's store, which led to the shooting. The fact that Beal was not charged with these crimes is irrelevant. As it is clear Beal was engaged in unlawful activities, the castle doctrine was inapplicable, and Beal was not entitled to a jury instruction on the presumption of fear set out in prong two. For this reason, we cannot find his counsel was ineffective for

11

failing to request a castle-doctrine instruction.

¶22. In addition to the fact that Beal was engaged in multiple unlawful activities, we cannot find the facts of this case support application of the castle doctrine as intended by the Legislature. The purpose of the castle doctrine is to allow a person to stand his ground against an intruder who is unlawfully trying to enter that person's home, the vehicle the person is occupying, or the person's business or place of employment. Beal was a customer at Patel's store. Beal knowingly pumped more gas than he paid for and got back into his cousin's car. Patel, who was at his place of business, approached the car to confront Beal. Beal was armed, illegally, with a .25-caliber handgun. Patel was unarmed. Beal knew Patel was unarmed. Patel verbally confronted Beal, telling him to pay for the gas.

¶23. Although Beal and the car's passengers claim that Patel reached in the car and hit Beal, there was no evidence of a physical altercation. Two other witnesses described the exchange as a "verbal altercation." Beal admitted that Patel was outside the car when he shot him. Three shell casings were recovered from the scene near Patel's body, all from Beal's gun. The autopsy report showed Patel died from a "distant-type gunshot wound to the forehead." Just before Patel was shot, he had been talking to Nasif about placing a food order for the store. Patel had written the order on a torn piece of a cigarette box. When Patel went outside to confront Beal, Nasif saw the car "jolt[]" forward and stop before he heard "boom, boom, boom"; then the car drove off. Nasif was standing approximately five feet from the car, as he had positioned himself to write down the vehicle's tag number. He testified Patel was "standing at the back passenger door," and "he was talking" and pointing

12

and shaking his index finger up and down. He did not see Patel strike anyone or reach inside the vehicle. Patel still had the handwritten order in his hand when he was shot.

¶24. After the shooting, Beal went about his business without reporting the incident. He and the other teens proceeded to the store to pay the cell-phone bill, as originally intended, and then went back to Winter Street. On the way, Latoya saw her mother walking toward the Shell. Her mother said she was going to the Shell because someone had been shot there. Latoya said nothing and proceeded to her grandmother's house. She later told her grandmother what had happened. After the shooting, Sergeant Felton drove down Winter Street, looking for someone familiar with the incident to interview. He saw Latoya and Evonye. Instead of speaking to him as they usually did, they "looked at [him]" with "a surprise[d] look on their face[s], and they turned and ran back in the house," which "surprised" Sergeant Felton and "threw him off." These facts are not representative of a situation where the castle doctrine would apply.

¶25. Beal's counsel chose to pursue a self-defense theory rather than a defense theory under the castle doctrine. Beal's counsel requested jury instruction D-1 on self-defense, which was given by the trial court. *See* Miss. Code Ann. § 97-3-15(1)(f) (Rev. 2014). Instruction D-1 states:

> The [c]ourt instructs the jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to believe that the victim intended to kill the defendant or to do him some great bodily harm, and in addition to this, he must have reasonable grounds to believe that there is imminent danger of such act being accomplished. It is for the jury to determine the reasonableness of the grounds upon which the defendant acts. If you, the jury, unanimously find that the defendant acted in self-defense, then

13

it is your sworn duty to return a verdict of NOT GUILTY in favor of the defendant.

The self-defense instruction was permitted based on the facts of this case, and it presented Beal's theory of defense.

¶26. Beal's counsel also requested, and was given, instruction D-6, which provided an instruction similar to the castle doctrine. D-6 states:

> The [c]ourt instructs the jury [that] a person who is not the initial aggressor and is not engaged in unlawful activity shall have no duty to retreat before using deadly force if the person is in a place where the person has a right to be, and you are not permitted to consider the [d]efendant's failure to retreat as evidence that the [d]efendant's use of force was unnecessary, excessive or unreasonable.

Again, this instruction presented Beal's theory of defense, and it contained the elements of the castle doctrine, with the exception of the presumption of fear.

¶27. As stated, counsel's decision "[w]hether to request a certain [jury] instruction generally is a matter of trial strategy." *McCoy v. State*, 147 So. 3d 333, 347 (¶36) (Miss. 2014). Accordingly, the intentional failure to request a certain instruction is presumed to be trial strategy. *Id.* We review matters of trial strategy on direct appeal only if "the record affirmatively shows ineffectiveness of constitutional dimensions." *Taylor v. State*, 167 So. 3d 1143, 1146 (¶5) (Miss. 2015). If the record does not show ineffectiveness of constitutional dimensions, the alleged ineffectiveness claim must be brought in postconviction proceedings to "give [counsel] a fair opportunity to explain any possible strategy in foregoing to request such an instruction." *McCoy*, 147 So. 3d at 347 (¶36); *see also Taylor*, 109 So. 3d at 596 (¶¶26-27) (finding counsel's failure to request an alibi

instruction, although alibi was one of defendant's theories of defense at trial, was trial strategy, for which counsel was not held ineffective on direct appeal).

¶28. Beal's counsel had multiple reasons to decline to request a castle-doctrine instruction. First, the castle doctrine did not apply because Beal was engaged in not one, but multiple, unlawful activities at the time of the shooting. Second, Patel was on his own property at the gas station, and the evidence presented by the State showed Patel was outside the car in a verbal altercation with Beal when he was shot. Third, Beal's theory of defense was covered elsewhere in the given jury instructions.

¶29. Giving deference to counsel's choice of trial strategy, coupled with the fact that the castle doctrine was inapplicable to Beal's defense, we cannot find that Beal's counsel was ineffective for failing to request a castle-doctrine instruction. This issue is without merit.

¶30. **THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY, FIRST JUDICIAL DISTRICT, OF CONVICTION OF MURDER, WITH A FIREARM ENHANCEMENT, AND SENTENCE OF FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWENTY YEARS TO SERVE, TWENTY YEARS SUSPENDED, AND FIVE YEARS OF SUPERVISED PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

**GRIFFIS, P.J., ISHEE, CARLTON, FAIR, JAMES AND GREENLEE, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J.**

**BARNES, J., DISSENTING:**

¶31. Respectfully, I dissent from the majority's decision to affirm Beal's conviction. I find that the failure to submit a jury instruction on the castle doctrine constituted ineffective assistance of counsel. Such an instruction would have given the jury the option to determine

whether Beal was presumed to have "reasonably feared imminent death or great bodily harm" when he used deadly force against Patel. Consequently, I would reverse and remand for a new trial.

¶32. In *Newell v. State*, 49 So. 3d 66, 74 (¶22) (Miss. 2010), the Mississippi Supreme Court discussed the provisions of the castle doctrine, noting:

> It is clear to us that, since the enactment of these statutes, Mississippi's "[c]astle [d]octrine" includes two prongs. First, under subsection (4), if the defendant is in a place where he had a right to be, is not the immediate provoker and aggressor, and is not engaged in unlawful activity, he has no duty to retreat before using defensive force. Miss. Code Ann. § 97-3-15(4) (Rev. 2006). And second, if the jury finds that any of the circumstances in subsection (3) are satisfied, the defendant who uses such defensive force *is presumed* to have reasonably feared imminent death or great bodily harm or the commission of a felony upon him. Miss. Code Ann. § 97-3-15(3) (Rev. 2006).

(Emphasis added). Here, the jury was presented with Jury Instruction D-6, which mirrors the language of subsection (4):

> The Court instructs the jury [that] a person who is not the initial aggressor and is not engaged in unlawful activity shall have no duty to retreat before using deadly force if the person is in a place where the person has a right to be, and you are not permitted to consider the Defendant's failure to retreat as evidence that the Defendant's use of force was unnecessary, excessive or unreasonable.

Beal was in his cousin's car where he had a lawful right to be, and nothing indicates he was the initial aggressor. The majority, however, agrees with the State's contention that Beal was engaged in unlawful activity at the time of the incident (possession of a firearm by a minor, fleeing the scene of a crime, and possession of tobacco products by a minor) and, therefore, was not entitled to a castle-doctrine jury instruction.

¶33. Beal argues that any unlawful activity excluding him from the castle-doctrine

16

presumption "should be reasonably related to the confrontation at hand," noting the unlawful activities listed by the State "were not the basis for Patel's altercation with Beal," and he was not charged with these other alleged crimes. I find Beal's reasoning sound. What constitutes "unlawful activity" is not defined in Mississippi's statute, and even with the evolvement of the castle doctrine in the last few years,[2] there is little caselaw regarding this issue, even in other jurisdictions. A recent decision by the Alabama Court of Criminal Appeals held that "[i]f a person enters a situation engaged in an unlawful activity *that in any way relates to or contributes to the situation*, that person cannot avail himself or herself of the 'no-duty-to-retreat' right" created by Alabama's "stand your ground" statute. *Fuller v. State*, No. CR-14-0368, 2015 WL 9261777, at *9 (Ala. Crim. App. Dec. 18, 2015) (emphasis added). However, the court further concluded that it did not believe that the statute was "intended to avail armed violent felons of its stand-your-ground law." *Id*. at *10; *see also Kidd v. State*, 105 So. 3d 1261, 1264 (Ala. Crim. App. 2012) (finding that because the defendant, a prior felon, possessed a firearm, *and the possession of the firearm led to the argument that resulted in the shooting of the victim*, the defendant had a duty to retreat under the applicable statute). While our supreme court has not addressed this specific question in the castle-doctrine context, the court has held that for recovery under the Mississippi Tort Claims Act to be barred because of a victim's criminal activity at the time of the injury, "it must be shown that the criminal activity has some *causal nexus* to the wrongdoing of the tortfeasor." *City of Jackson v. Perry,* 764 So. 2d 373, 379 (¶25) (Miss. 2000) (emphasis added).

---

[2] Subsections (3) and (4) were added to Mississippi's justifiable-homicide statute in 2006.

17

¶34. Beal, admittedly a minor who plainly possessed a firearm, had no prior record, and no evidence suggests that he went to the gas station in anticipation of a violent altercation. Furthermore, I find the evidence was disputed as to whether Beal was fleeing the gas station without paying. The teens testified that they offered payment to Patel. Concerning the possession of tobacco products by a minor, the store owner, Patel, would have been equally culpable in that regard, as his store had just sold the tobacco products to the minor. Thus, whether Beal was engaged in unlawful activity within the meaning of the castle doctrine was a question of fact for the jury to determine. Here the circuit court made no determination that Beal was engaged in unlawful activity, recognizing it as a question of fact for the jury, and the jury was properly instructed regarding the first prong recognized in *Newell*. *See State v. Montgomery*, No. E2014-01014-CCA-R3-CD, 2015 WL 3409485, at **7-8 (Tenn. Crim. App. May 28, 2015) (Regarding a defendant's claim of justifiable self-defense, "the question of whether the [d]efendant's actions were unlawful at the time of the shooting was a question for the jur[ors] in their role as fact-finders.").

¶35. However, as the majority acknowledges, the jury was not instructed regarding the presumption created in subsection (3) of the statute. Instead, Beal's counsel submitted a general "justifiable homicide" jury instruction (Jury Instruction D-1), which was given by the court. The supreme court in *Newell* concluded that a trial court's refusal of the defendant's proposed jury instruction on the castle doctrine was an abuse of discretion. *Newell*, 49 So. 3d at 78 (¶34). As a result, it reversed James Newell's conviction of deliberate-design murder and remanded for a new trial, holding:

18

[T]he jury should have been instructed that, if it believed Newell's version of the events surrounding his altercation with [the victim], then it should presume that Newell used defensive force against [the victim] because he "reasonably feared imminent death or great bodily harm, or the commission of a felony upon him or against the vehicle which he was occupying."

*Id*. (quoting Miss. Code Ann. § 97-3-15(3) (Rev. 2006)). Furthermore, in *Thomas v. State*, 75 So. 3d 1112, 1116 (¶¶16-17) (Miss. Ct. App. 2011), our Court found that the trial court erred in refusing Justin Thomas's proposed castle-doctrine instruction, as the jury instruction on self-defense "[did] not adequately present [the defendant's] theory of defense." We concluded that the failure to give the instruction warranted a reversal of Thomas's conviction and a remand for a new trial, holding: "Although the self-defense instruction is similar, it does not specifically address the commission of a felony against Thomas in his vehicle or whether the crowd was attempting to remove Thomas unlawfully from the vehicle against his will to cause him harm." *Id*; *compare Matthews v. City of Madison*, 143 So. 3d 571, 577 (¶¶11-12) (Miss. 2014) (finding there was no factual basis to support the giving of a castle-doctrine instruction, and the defendant was not entitled to the presumption).

¶36. Here, I find there was a factual basis in the evidence to support a castle-doctrine instruction. The witnesses inside the car testified Patel was reaching inside the car (across another youth), while yelling at and hitting Beal. Although eyewitness Rhymes denied there was any physical contact between Beal and Patel, characterizing it as a "verbal altercation," Rhymes acknowledged that Patel "was inside the vehicle[,] . . . positioned in the vehicle on the passenger side of the vehicle in the back seat." Nasif testified that Patel was waving his finger at Beal, although he said he did not see Patel reach inside the car. The teens further

19

claimed that they saw a man standing behind Patel with a gun in his waistband. Evonye testified that the gun was "chrome." According to Sergeant Felton, a black and silver semi-automatic handgun was later found inside the store, and a clerk and other employees were at the store at the time of the shooting.[3] Thus, there is evidence to support Beal's claim that he was not the "initial aggressor" in this case, and Patel unlawfully entered the car Beal was lawfully occupying.

¶37. Consequently, the issue is whether trial counsel's failure to propose a proper castle-doctrine instruction constituted ineffective assistance of counsel and prejudiced Beal's defense. While I have found no cases in Mississippi addressing whether a counsel's failure to submit a castle-doctrine instruction is prejudicial, I have found discussions from other jurisdictions instructive. In *State v. Dale*, No. 2012 CA 20, 2013 WL 2406261, at *4 (¶20) (Ohio Ct. App. May 31, 2013), the Ohio Court of Appeals concluded that "[t]he trial court erred in failing to instruct the jury about the existence of the castle doctrine as an exception to the duty to retreat." Addressing the claim of ineffective assistance of counsel, it stated:

> An instruction on the castle doctrine could have established a critical element of [the defendant's] self-defense claim, and there was no strategic basis to omit such an instruction.
>
> . . . .
>
> Because we do not know the basis for the jury's verdict, we conclude that there was a reasonable probability that, but for the incomplete jury instruction, the outcome of the case would have been different, i.e., the jury might reasonably have found that [the defendant] acted in self-defense.

*Id*. at *6 (¶¶27, 29). Conversely, in *State ex rel. Adkins v. Dingus*, 753 S.E.2d 634, 641

---

[3] We note that there was no surveillance video of the incident.

(W.Va. 2013), the West Virginia Supreme Court found that counsel's failure to submit such an instruction was not error. Although it recognized that "the threshold for justifying homicide under the castle doctrine is lower than under a traditional theory of self-defense," it stated that counsel's trial strategy to rely solely on self-defense "was objectively reasonable." *Id*. at 640. Furthermore, it noted:

> Having presented substantial evidence, counsel was not required to develop every conceivable defense that was available. Nor was counsel required to offer a defense or instruction on every conceivable defense. What defense to carry to the jury, what witnesses to call, and what method of presentation to use [are] the epitome of . . .strategic decision[s], and. . . one[s] that we will seldom, if ever, second guess. Obviously, lawyers always can disagree as to what defense is worthy of pursuing [–] "such is the stuff out of which trials are made." *Solomon v. Kemp,* 735 F.2d 395, 404 (11th Cir. 1984). . . .
>
> We hold that the mere fact that trial counsel failed to offer a viable defense instruction is not alone a sufficient ground to prove ineffectiveness of counsel.

*Adkins*, 753 S.E.2d at 640-41 (quoting *State v. Miller,* 459 S.E.2d 114, 127-28 (W. Va. 1995)). It concluded that while the evidence "may have been sufficient to warrant a castle[-]doctrine instruction, trial counsel's reliance on self-defense was not unreasonable[.]" *Id*. at 641. There was some question in that case whether the victim was unlawfully on the premises, as he had been at the defendant's home with permission intermittently throughout the evening. *Id*. at 640.

¶38.    To prevail on his claim of ineffective assistance of counsel, Beal must show under *Strickland v. Washington*, 466 U.S. 668, 686 (1984), that his counsel's failure to submit a castle-doctrine jury instruction "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Our supreme

21

court has held that "[w]hen claiming ineffective assistance of trial counsel because of jury instructions, 'it is the duty of the appellant to demonstrate both error in failing to receive the instruction and the prejudice to the defense.'" *Havard v. State*, 928 So. 2d 771, 789 (¶28) (Miss. 2006) (quoting *Burnside v. State,* 882 So. 2d 212, 216 (¶22) (Miss. 2004)). However, "[a] criminal defendant has a right to assert alternative theories of defense, even inconsistent alternative theories." *Reddix v. State,* 731 So. 2d 591, 593 (¶9) (Miss. 1999).

¶39. Beal asserts that had his "trial counsel offered the castle[-]doctrine instruction, the jury would have been instructed that if it believed Beal's version of events surrounding his altercation with Patel, then it should presume that Beal used defensive force against Patel because he reasonably feared imminent death or great bodily harm[.]" The only reference made regarding the castle doctrine was asserted in Beal's motion for a directed verdict, when counsel argued that Patel was trying to remove Beal from the vehicle and that Beal had "a right to be inside that vehicle and lawfully so." The circuit court denied the motion, noting that Beal "was in a vehicle that could leave." This comment by the judge disregards the explicit language in section 97-3-15(3) listing an "occupied vehicle" as a place where Beal had a right to "stand his ground" under the castle doctrine.

¶40. Based on *Newell* and *Thomas*, and the circumstances of this case, I find defense counsel's failure to submit a jury instruction on the second prong of the castle doctrine deprived the jury of considering the presumption associated with the statute – a presumption not contained in Jury Instructions D-1 and D-6 – and prejudiced Beal's defense. Unlike the majority, I can conceive of no strategic basis to omit such an instruction. Accordingly, I

22

would reverse and remand for a new trial.

**IRVING, P.J., JOINS THIS OPINION.**